### BROWN v. FOSTER.

1. PARTNERSHIP—AUTHORITY OF PARTNER—CONTRACTS.

A member of a partnership engaged in selling farm implements, and in the sale of threshing machines on commission, who, by the articles of copartnership, was to have charge of the "canvassing part of the business," the other members to

"look after the buying and selling of stock," could, by reason of his general authority as a partner, bind the firm to an agreement with the owner of machinery that it should not be delivered to a purchaser until the purchase price was secured.

2. SAME—GOODS ON CONSIGNMENT—CONVERSION.

Where a threshing machine received by a partnership to be sold on commission was delivered to a purchaser in violation of the terms of the agreement under which they received it, and was subsequently taken into possession by one of the firm, his possession was the possession of the firm, and its wrongful delivery by him to another was a conversion by the firm.

3. SALE—RATIFICATION—CONVERSION.

A wrongful sale by defendants of a machine consigned to them by plaintiffs for sale on commission was not ratified by conduct indicating a willingness to let the sale stand if defendants would pay plaintiffs the value of the machine less their commissions.

4. SAME.

Defendants, having received from plaintiffs a threshing machine for sale on commission, without authority sold it to a person on condition that it should prove satisfactory. It not being satisfactory, plaintiffs offered the purchaser to exchange another machine for it, but the offer was not accepted. *Held,* that such offer was not a ratification of the sale.

5. TORTS—WAIVER—ASSUMPSIT—BAILMENTS.

Where a bailee, without authority from the owner, turned the property over to another under an agreement that, if it should prove satisfactory, such person would buy it, the owner could waive the tort, and sue the bailee on the common counts in *assumpsit* for its value.

Error to Emmet; Shepherd, J. Submitted April 15, 1904. (Docket No. 70.) Decided June 25, 1904.

*Assumpsit* by Frank E. Brown and John Sehler, copartners as Brown & Sehler, against Frank F. Foster, Cornelius Burke, and William H. Coon, copartners as the Harbor Springs Implement Company, to recover the value of chattels converted. From a judgment for defendants, plaintiffs bring error. Reversed.

*Ward & Brown*, for appellants.

*Wade B. Smith* and *Halstead & Halstead*, for appellees.

CARPENTER, J.   This case was tried by the court without a jury.   A finding of facts was made, and judgment rendered for defendants.   We state such of said facts as are necessary to a disposition of the legal questions involved.

Plaintiffs are copartners engaged in the business of selling machinery at Grand Rapids, Mich.   Defendants were copartners engaged in selling farm implements at Harbor Springs, Mich., under the firm name of the Harbor Springs Implement Company.   Their business was the sale of farm implements, but it did not include the buying and selling of threshing machines, and no such machines were in fact sold except on commission.   Some time after the formation of the partnership, plaintiffs stated to defendants that they would pay 20 per cent. commission if the defendants would procure a customer to whom they could sell a threshing outfit.   The articles of copartnership between defendants contained this clause:

"The said W. H. Coon is to give his undivided time and attention to the said business, and is to have general charge of the canvassing part of said business.   The said Frank F. Foster and Cornelius Burke are to look after the buying and selling of stock, to the keeping of the books of account, and the store work generally."

Before the transaction hereinafter set forth, defendant Foster notified plaintiff Brown of the substance of the foregoing clause.

On the 24th of August, 1900, defendant Coon and one Frank Gillespie met plaintiff Brown at Grand Rapids. Said plaintiffs and said Frank Gillespie, who acted for himself and assumed to act for his father, John Gillespie, entered into a written agreement whereby plaintiffs sold and said Gillespie purchased a steam threshing outfit for $650; $100 cash (which had been deposited with defend-

ants), and the payment of the balance to be secured by a mortgage upon certain chattels and a mortgage on the home farm of John Gillespie. Said Frank Gillespie signed the name of "John Gillespie Sons," but he had no authority whatever to bind his father, John, by this agreement. Said Coon, in the name of the defendant partnership, signed a writing guaranteeing "the settlement for said machinery just as agreed by the son." It was verbally agreed at this time between plaintiffs, defendant Coon, and Frank Gillespie that said Coon should go with said Gillespie to Beaver Island, where the latter lived, and procure the signatures to the necessary papers, and complete the settlement agreed upon, before the machinery should be shipped to Beaver Island from Harbor Springs. Notes and mortgages were prepared in accordance with this contract, and the notes and chattel mortgage signed by Frank Gillespie, and a real-estate mortgage was prepared to be executed by John Gillespie and wife on John's home farm, and all of these securities were delivered to defendant Coon to be taken to Beaver Island to obtain execution thereof by John Gillespie and wife. The machinery was immediately shipped by railway to Harbor Springs, billed, "Frank and John Gillespie." Frank Gillespie took the machinery from the railway company at Harbor Springs (Coon advancing from defendants' funds money to pay the freight), and carried the same to Beaver Island. John Gillespie, however, refused to carry out the proposed arrangement. Defendant Coon soon afterwards arrived at Beaver Island, and, upon learning of John Gillespie's refusal, assumed charge of the machinery. Assuming to act for plaintiffs, and without authority, he turned the same over to one Gallagher, under the arrangement that, if the power proved satisfactory, Gallagher should purchase the same for $600. Gallagher paid $80 to apply on his purchase, and used the threshing outfit during that season, but the power proved unsatisfactory, and the sale to him never has been consummated, though the machinery continues to remain in his possession.

The learned trial judge gave judgment for the defendants on the ground that the plaintiffs were not entitled to recover under their declaration, and also on the ground that the acts and dealings of Coon with Gallagher created no liability enforceable against defendants Foster and Burke. We will examine each of these questions separately, and in inverse order.

*First.* Was the partnership composed of the three defendants responsible for Coon's action in turning the machinery over to Gallagher? We think the verbal agreement made between defendant Coon, as the representative of his partnership, the plaintiffs, and Frank Gillespie, that the machinery should not be shipped from Harbor Springs to Beaver Island until the securities were obtained, created an obligation binding upon the defendant partnership. Though the business of the copartnership did not include the buying and selling of threshing machines, it is a necessary inference from the findings that those were sold on commission. While the articles of copartnership gave defendant Coon " the general charge of the canvass ing part of said business," and made it the duties of defendants Foster and Burke "to look after the buying and selling of stock," we cannot presume that the general authority of the defendant Coon, as a copartner, was not sufficient to authorize him to make arrangements respecting threshing machines to be sold on commission. He had, in our judgment, as the representative of the defendant partnership, sufficient authority to agree with the owner of goods to be sold on commission that they should not be delivered to a purchaser until payment of the purchase price was secured. If it were otherwise, proper arrangements between owners of goods and agents who sell on commission could not be made. Is the rule changed by the circumstance that the outfit in question was shipped in the name of the Gillespies? I do not think so. By verbal arrangement between defendant Coon, Frank Gillespie, and the plaintiffs, Coon had authority to keep the threshing machine in Harbor Springs until this settlement

was made. It is true this agreement was not in writing, but I know no provision of law that requires it to be in writing. The Gillespies recognized his authority, and, acting upon it, as he was justified in doing, Coon assumed to control and did obtain the possession of the machinery. Nor can it be said that because Coon permitted the machinery to be taken to Beaver Island contrary to this arrangement, and later took possession of it there, he was not acting under this authority. He had violated this agreement by permitting·Gillespie to take the machinery to the Island, and when he retook possession of the machinery he was taking a step which he was in duty bound to take to protect plaintiffs from the consequences of that violation.

Was this possession of defendant Coon the possession of the defendant partnership? I think we are bound to conclude that it was the intent of this arrangement to obligate the defendant partnership, and not simply defendant Coon, to assume possession of the machinery if the Gillespies failed to make the agreed settlement. And, as we have aready indicated, defendant Coon had authority to bind the defendant partnership by such arrangement. We must conclude, therefore, that when Coon took possession of the machinery, on the failure of the Gillespies to furnish the agreed security, his possession was the possession of the defendant partnership. His delivery of the machinery to Gallagher was the wrongful conversion by defendants of plaintiffs' property.

It is insisted that plaintiffs cannot recover because they, by their conduct, ratified the contemplated sale to Gallagher. There is certainly no finding of fact that they ratified said sale, but it is insisted that their failure to promptly disaffirm the contract made in their names amounts to a ratification. The most that can be said of that conduct is that it indicates their willingness to let the sale to Gallagher stand if the defendants would pay them the value of the machinery less their commissions. Surely, defendants have no right to say that this conduct amounts to a ratification.

It is also contended that an offer on the part of the plaintiffs, made on the 27th of October, to exchange with Gallagher another engine for the one he had received, amounted to a ratification. We think it clear that plaintiffs made this proposition hoping to satisfy Gallagher, and to induce him to complete his contemplated purchase. Gallagher did not accept plaintiffs' proposition, and the sale was not concluded. No one had a right to understand that this proposition was intended to ratify Coon's sale to Gallagher. If it is true that by this proposition plaintiffs indicated that the property had ceased to be theirs, that position is consistent with their present claim, which is that defendants' action in delivering the property to Gallagher amounted to a conversion.

The suggestion is also made that the action, being brought on the common counts in *assumpsit*, amounts to a ratification of the sale by Coon to Gallagher, because plaintiffs cannot recover on the common counts except on the theory of such ratification. Our conclusion, as hereinafter stated, that plaintiffs can waive defendants' conversion, and recover on the common counts, is a sufficient answer of this contention.

Can plaintiffs waive this tort, and maintain an action of *assumpsit?* If they can, they can recover under the declaration in this case, for the common counts in *assumpsit* are a part of their declaration. When the machinery was delivered to Gallagher, it was in defendants' possession as agents or bailees of plaintiffs. We think it is settled that, under these circumstances, the owner of the property may waive the tort and recover on the common counts in *assumpsit*. See *Newman* v. *Olney*, 118 Mich. 545 (77 N. W. 9); *Tuttle* v. *Campbell*, 74 Mich. 652 (42 N. W. 384, 16 Am. St. Rep. 652).

We think the parties, by their correspondence, have fixed $600 as the value of the threshing outfit, and that defendants are entitled to 20 per cent. of this as commission.

We conclude, therefore, that the judgment of the circuit court should be reversed, and that the plaintiffs are entitled to a judgment of $480, with legal interest thereon since September 8, 1900, the date of the sale to Gallagher.

Moore, C. J., Montgomery and Hooker, JJ., concurred. Grant, J., did not sit.