BRUCKER v. MANISTEE & GRAND RAPIDS RAILROAD CO.

1. CONTRACTS—BREACH—FRAUD—CONSTRUCTION OF RAILROADS.

In an action upon a contract for the grading of a railroad, for damages claimed by plaintiffs because of the fraudulent prevention by defendant of performance in pursuance of the contract provisions, and for the wrongful breach thereof by defendant, and for other damages, evidence tending to show that defendant unduly delayed the furnishing of estimates required by the agreement, that improper measurements were given, insufficient allowances made for extra work, unreasonable demands made on plaintiffs, and that defendant failed to get necessary rights of way, had a tendency to show fraudulent conduct and breach of contract.

2. SAME—EVIDENCE.

Whether or not testimony tending to show that the contractors were delayed, was of a substantial nature, was a question for the jury.

3. SAME—COMPROMISE AND SETTLEMENT—SUPPLEMENTARY CONTRACT.

Where a construction contract was supplemented by an additional agreement providing for an advancement of funds and for completing the work by a specified date, the two contracts were properly construed together.

4. SAME—EXCUSE FOR BREACH—DISCHARGE.

It was for the jury to determine whether defendant wrongfully took over and completed the work.

5. SAME—DAMAGES—LOSS OF PROFITS.

Although it cost defendant more than the contract price to complete the grading, plaintiffs were entitled to show that it cost defendant more than was necessary.

6. SAME—CHANGES—OPTION TO CHANGE ROUTE.

Since defendant, by the terms of the construction contract, reserved the right to change the route, the damages should have been determined by the route as constructed, instead of the one originally surveyed.

7. SAME—PERSONAL PROPERTY CONVERTED.

Under a supplemental contract fixing the date when the work was to be completed, and authorizing defendant to complete

the work if the contractors should fail to do so, it was a breach of the contract for defendant to take possession of the grading tools and machinery before the date fixed, and although such right may have existed under the original contract, it was terminated or limited by the supplemental agreement.

8. SAME.

And although replevin, trover, or a special action on the case might lie for unlawfully taking possession of tools, plaintiffs might also treat the action as a breach of the contract and recover damages therefor in assumpsit.

9. PLEADING—CASE—ASSUMPSIT.

A count was not changed from contract to tort for charging, in addition to the alleged breach of contract in taking possession of plaintiff's tools, that defendant thereupon became indebted to plaintiffs for the value thereof.

10. SAME—VARIANCE—SURPLUSAGE.

The averment of the declaration to the effect that plaintiff sold the tools, not being supported by proof, was surplusage.

11. CONTRACTS—RAILROAD CONSTRUCTION—INTERPRETATION.

Where a grading contract provided that earth taken for embankments at points specified by the chief engineer should be paid for at embankment rates, it did not preclude a recovery for material which sank below the surface, and which was provided for by another clause that, whenever it should be necessary to provide for future settling of the embankment, the height and width of the roadbed should be increased as directed.

Error to Osceola; Rose, J. Submitted October 18, 1910. (Docket No. 80.) Decided March 31, 1911. Rehearing denied September 29, 1911.

Assumpsit by B. Ferdinand Brucker and Charles M. Roberts against the Manistee & Grand Rapids Railroad Company for work and material and for breach of contract. Judgment for plaintiffs. Defendant brings error. Reversed.

*Hal L. Cutler* (*Charles E. Pain* and *Charles A Withey*, of counsel), for appellant.

*Durand & Holland* (*B. N. Savidge*, of counsel), for appellees.

HOOKER, J. The plaintiffs contracted with defendant to grade a railroad; their compensation to be by the yard for fills and cuts, and by the acre for clearing land. They performed a portion of the contract, and defendant finished the work. The declaration is in assumpsit for damages for the breach of the contract, and on the common counts for work and labor done and materials furnished. A trial was had and a verdict and judgment for the plaintiffs followed. Defendant appealed.

Defendant asserts:

*First.* That the trial judge allowed the jury to find that the defendant and its engineers were guilty of fraud or gross or serious error, which deprived plaintiffs of a share of their legitimate earnings, previous to the time that defendant took over the work.

*Second.* That the defendant by its engineers fraudulently and negligently failed to lay out the work, and fraudulently compelled the plaintiffs to work disadvantageously to their damage.

*Third.* That the defendant wrongfully took over the work, whereby the plaintiffs were deprived of profits. Error is assigned upon the ground that there was no testimony tending to prove these things, and they should not have been allowed to go to the jury.

*Fourth.* Defendant claims that the plaintiffs should not have been allowed to recover, under the declaration and in this form of action, the value of personal property taken from plaintiffs when it took over the work.

*Fifth.* Error is assigned on the refusal of the court to compel plaintiffs to elect whether they would seek to recover under the contract or upon the *quantum meruit.*

*Sixth.* Error is predicated on the refusal to grant a new trial.

*Seventh.* A fatal variance between the declaration and proofs on the subject of the right to recover for personal property of the plaintiffs taken by defendant.

*Eighth.* Error is assigned upon several points that will be alluded to later if it is found necessary.

This work was begun under a written contract which contains somewhat exceptional provisions in relation to the rights of defendant, regarding the conduct of the work, the binding effect of directions and estimates of the

defendant's engineer, and his decisions on controversies growing out of the contract and the dealing of the parties. We do not set forth the contract, which is long, but will refer to its provisions as it shall become necessary in our discussion of the questions raised. It required that the work be completed on or before May 30, 1905.

On August 2, 1905, the defendant being dissatisfied at the noncompletion of the work, and plaintiffs being out of funds, the parties executed an agreement, which we include in this opinion. It is as follows:

"Agreement made this 2d day of August, 1905, by and between Brucker & Roberts, parties of the first part, and Manistee & Grand Rapids Railroad Company, party of the second part, witnesseth that: Whereas, said parties of the first part have been doing work under a certain contract executed between them and second party and dated December 5, 1904, and they have received from time to time payments of money under estimates made by the chief engineer of second party, and there is still unfinished work to be performed under said agreement; and, whereas, the first parties, in order to fully complete the work under said contract and in accordance therewith, desire second party to advance to them the amount of three thousand dollars ($3,000.00) for which no estimate has yet been made by the said engineer of second party, and said party is willing to make said advance by way of loan to said first parties in order to insure the faithful completion of said work: Now, therefore said second party agrees to advance and loan said amount of three thousand dollars ($3,000.00) to said first parties for the purpose of assisting them in fully completing said work, the said sum to be repaid to second party out of the moneys yet to be realized by first parties under said contract. In consideration thereof, first parties agree that said entire plant belonging to said first parties and now being used upon said work, consisting of 10 western dump cars; ½ mile 30 lb. railroad track; 17 No. 3 wheel scrapers; 18 drag scrapers; 1 buggy and harness; 1 blacksmith outfit; 1 camp outfit complete; 1 pile driver and tools connected therewith—shall be mortgaged and pledged to said second party to secure the payment of said three thousand dollars, and that said second party shall have possession of said plant until said work is fully com-

pleted. Said first parties further agree to promptly go forward with said work, and have the roadbed thereof fully completed by the 15th day of September, 1905, in strict accordance with the provisions of said contract, and in the event that said work is not fully completed in accordance with said contract by September 15, 1905, then, and in that case, said Brucker & Roberts agree that the railroad company may complete the said work itself or engage other contractors to complete said work, and that said railroad company or other contractors engaged by it to complete said work shall have the use until said work is completed of all of the said plant, tools, etc., herein described. It is further agreed that from time to time said engineer of said second party shall make estimates of the work as it progresses and that said first parties shall receive payments therefor under and in accordance with the terms of said contract."

On August 23, 1905, defendant took possession of plaintiffs' tools, etc., and proceeded with the work, completing it on December, 11, 1905. The action was brought in 1908. The plaintiffs claim that they were wrongfully prevented from fully performing the contract, and claim the right to recover the value of the work actually done by them and not paid for, at a price not exceeding the contract rates, upon the common counts. This, according to the plaintiffs' brief, amounted to upwards of $6,000 and interest. There were other items based on the common counts for work done, such as extra work provided for in the contract, and extra work caused by changing the line of road. The special count was for damages arising from the conduct of the defendant, in hindering, delaying and preventing the completion of performance and may be divided into two classes, one of matters growing out of the first contract only, and the other arising after the second agreement was made, and these are alleged to be based on fraudulent conduct, and collusion between defendant and its engineer, and gross and serious error on their part which deprived plaintiffs of their legitimate earnings. This latter included the taking of plaintiffs' property, i. e., tools, etc.

We will discuss the case by topics in accordance with the propositions in defendant's brief, but perhaps not in the same numerical order.

**First Topic.** " Is there any evidence in the case which properly takes it to the jury upon the proposition that defendant or its engineers were guilty of fraud or gross or serious error which deprived the plaintiffs of their legitimate earnings under the contract before the work was taken over by the defendant ? "

(*a*) There was testimony from which fraud might be inferred. The plaintiffs offered testimony tending to prove fraud, such as delay in furnishing estimates as required by the contract, omission to furnish them to any one but the defendant, improper and inaccurate measuring with incorrect estimates, absences of engineers, omission of dates, failure to estimate and allow for borrow pits, or allow for clearing and grubbing same, failure to estimate and allow extra work, changes of or alleged correction of measurements of first engineer by his successor on new measurements. Taken in connection with the testimony that delays were occasioned by a failure of defendant to obtain right of way, and to require plaintiffs to work at unseasonable times, in wet and clay, when they might have been permitted to work in sandy and dry ground, etc., proof of these claims tended to establish plaintiffs' claim. We do not mean to say that this was strong or weak proof, but it was testimony from which an ulterior motive might properly be inferred. It is undoubtedly the rule that fraud should be clearly established, and in equity cases, where this court hears the cause *de novo*, it has an opportunity of passing on the merits of such a question. In actions of law, however, it cannot do this except where the question is raised on a motion for new trial, or where, from the whole evidence, it can say that there is no evidence tending to prove it or is as consistent with the absence as with the presence of a fraudulent motive. We have not such a case, and the question of fraud should have been left to the jury, as it was.

**Second Topic.** "Is there any evidence in the case which tends in any legitimate manner to show that the defendant by its engineers fraudulently and negligently failed to lay out work, or that the plaintiffs were fraudulently compelled to work in clay ground when it was wet, to their disadvantage?"

In answer to plaintiffs' claim, counsel say that they find "no substantial testimony in the record which indicates that the contractors were materially delayed." There was some testimony, and it was for the jury to determine whether it was substantial or not.

**Third Topic.** "A preliminary question to be disposed of is: Did the defendant take over the work unlawfully? If this preliminary question is ruled against appellant, it brings us to the main proposition under this topical head, which is: Does the record present any competent, material, relevant testimony of a legal character, sufficient to take the case to the jury upon the question of loss of profits to the plaintiffs, upon that portion of the work taken over and completed by defendant?"

(a) We are of the opinion that defendant's counsel are right in their contention that:

"The main contract (R. pp. 565–596), and the supplemental contract (R. pp. 602–604), are susceptible of being and should be read as one contract."

We find little, if any, discussion of this question in the brief of plaintiffs' counsel, and we infer that defendant's claim in that regard is not seriously questioned. However that may be, we think that the instruments are susceptible of no other construction.

We also agree with defendant in the following proposition:

"A stipulation that the railroad company may terminate the contract when in its opinion the work is not progressing favorably or the contractor is not duly complying with the provisions of the contract, is binding upon the contractor, unless the action of the arbiter is successfully assailed for fraud or gross error implying bad faith. The power to terminate a contract must be exercised in good

faith, but the burden is upon the contractor to show a fraudulent exercise of the reserved power."

While the construction of the contract was a question of law, the conduct of the defendant in taking over the work is open to the jury upon the question of fraud and bad faith, and we think there was evidence from which it may have been inferable. It should be understood, however, that we express no opinion upon the merits of this question. The question was a proper one for the jury, and it has been decided by the jury.

**As to Plaintiffs' Loss of Profits.** Counsel for defendant contend that the record shows that the completion of the work by it cost more than the contract price, and that consequently the plaintiffs would not be entitled to recover damages for the deprivation of the opportunity to finish the work themselves. If the contract was terminated in bad faith, the plaintiffs might claim that the work done by defendant cost more than necessary, and testimony of that kind was introduced. The plaintiffs are not bound by the rule contended for.

We also sustain the contention of the defendant as to its right to change the route. The contract provided that:

" The location of any portion of the road, as also the slopes of excavations and embankments, the length of sections, the grades, or the width of the roadbed, may be altered whenever said chief engineer shall consider such alteration necessary or expedient, but such alteration shall not be allowed as a reason for any claim for extra compensation, and it is expressly agreed by the parties hereto that the price to be paid per yard shall cover the risk of any such change that may operate to the disadvantage of the party of the second part, and the party of the second part shall have the benefit of any alteration that may operate in its favor."

Before this action was brought, this route was changed, as defendant had a right to do, under the contract. Hence the damages should have been measured by the route as built, rather than as originally staked out. The

learned circuit judge was of the opinion that if the contract
was unlawfully terminated the right to and measure of
damages became fixed at once, and could not be affected
by a subsequent change of route.   We are of the opin-
·ion that this was incorrect.   Had the plaintiffs completed
the job, the measure of their pay would have been the
work actually done upon the grade as changed.   The
same is true as to damages for the interruption of their
performance of the contract.   Counsel for the parties cite
no authorities in point upon the question.   We think it
elementary, however.

**Fourth Topic.**   " This subdivision presents the question
of whether the plaintiffs were entitled to recover in this
form of action, and under their declaration, the value of
the personal property taken from them by the defendant
when it took over the work and used it in completing the
:job."

The action is assumpsit.   The original contract pro-
vides :

"That if said second party shall at any time neglect or
refuse to progress with the work as fast as in the opinion
of said chief engineer or party of the first part (communi-
cated in writing to said second party) may be necessary
for the completion by the time specified herein, then said
first party may declare this contract abandoned."

The supplemental contract contains the following :

" Said first parties further agree to promptly go for-
ward with said work, and have the roadbed thereof fully
completed by the 15th day of September, 1905, in strict
accordance with the provisions of said contract, and in
the event that said work is not fully completed in accord-
ance with said contract by September 15, 1905, then, and
in that case, said Brucker & Roberts agree that the rail-
road company may complete the said work itself or en-
gage other contractors to complete said work, and that
said railroad company or other contractors engaged by it
to complete said work shall have the use until said work
is completed of all of the said plant, tools, etc., hereinbefore
described."

These two provisions should be construed together.

In our opinion, however, the latter superseded the former, and the learned circuit judge did not err in holding that the depriving of the plaintiffs of their tools, and opportunity to complete the work, before September 15th, was unlawful and a breach of the contract. This being so, it is unnecessary to discuss the remedy for the tools upon the theory that their taking was lawful.

Being unlawful, it is possible that they might have been replevied, or, after the demand was made, trover, or possibly a special action on the case, would have been proper, or the act might have been treated as a breach of contract, as it was.

The special count alleged the breach of the contract, and claimed damages therefor. Several breaches were charged, among them the seizure and conversion of the tools. The allegation that defendant became indebted for the value of the tools was perhaps unnecessary, but it had not the effect of changing the count from assumpsit to one in trover or trespass. A case closely in point is *Hoey* v. *Harty*, 48 Mich. 191 (12 N. W. 44); *Thomas* v. *Schram*, 52 Mich. 213 (17 N. W. 815); *Tregent* v. *Maybee*, 54 Mich. 226 (19 N. W. 962); *Newman* v. *Olney*, 118 Mich. 545 (77 N. W. 9); *Brown* v. *Foster*, 137 Mich. 35 (100 N. W. 167).

We are of the opinion that the special count was broad enough to cover the damages for the loss of tools, and that all damages to which plaintiffs were lawfully entitled were recoverable under it, and that an election of counts was unnecessary.

**Sixth Topic.** *Motion for New Trial.* As the cause must be reversed upon the point relating to the measure of damages, it is unnecessary to consider the motion for a new trial.

**Seventh Topic.** *Variance.* The allegation in the special count that the defendant disposed of the tools for a sum of money may be treated as surplusage under the proof on this record.

**Eighth Topic.** *Miscellaneous Assignments.* Several

of these may not arise on another trial. Some of them involve legal questions, but counsel have refrained from much discussion of them and from citing authorities to support their contention. We therefore leave them undecided.

In view of a possible new trial, we should add that we are of the opinion that the plaintiffs were entitled to payment for all material used in the embankment except such as came from excavations and was measured as such. The provision that borrowed earth for embankments shall be paid for at embankment prices does not preclude the recovery for material which sunk below the surface. This is indicated by section 22 of the specifications, which provides that—

"Whenever it is necessary to provide for the future settlement of the embankments, the height and width of the roadbed shall be increased as directed."

The judgment is reversed, and a new trial ordered.

MOORE, MCALVAY, BROOKE, and BLAIR, JJ., concurred.