ANDERSON'S VEHICLE SALES, INC v OMC-LINCOLN

Docket No. 78-3839. Submitted June 21, 1979, at Detroit.—Decided
    November 5, 1979.

Anderson's Vehicle Sales, Inc., has been the sole dealer in a tri-
    county area for Cushman light industrial vehicles under a year-
    to-year dealer agreement with OMC-Lincoln and its parent
    corporation, Outboard Marine Corporation, since 1966. On July
    5, 1978, OMC-Lincoln and Outboard Marine Corporation termi-
    nated the dealer agreement upon 30-day written notice as
    provided under the terms of the agreement, and stated termi-
    nation was effective August 5, 1978. On July 11, 1978, a new
    dealer-agreement statute was enacted, effective immediately,
    requiring 60 days written notice and cause as prerequisites for
    valid termination. Anderson's Vehicle Sales, Inc., and its presi-
    dent, William Anderson, started suit in Oakland Circuit Court.
    Frederick C. Ziem, J., held that the new statute was not
    retroactive in its application and, therefore, did not apply to
    the termination. The court determined that, on its face, the
    termination was in accordance with the dealer agreement and
    therefore effective. Plaintiffs appeal. The issues on appeal are
    whether the effective date of the statute and its provisions
    control and have immediate application to dealer contracts
    already in existence and whether the statute unconstitutionally
    impairs substantial existing contractual rights in that it de-
    stroys the central undertaking of plaintiffs' and defendants'
    contract. *Held:*

    1. The Legislature intended that the dealer-agreement stat-
    ute should have immediate effect regarding the practices that it
    proscribes. Defendants' notice of termination was sent on July
    5, 1978, before the enactment of the statute, with termination
    to take place on August 5, 1978. Therefore, no retroactive
    application problem was presented because the termination of
    the dealer agreement was to occur subsequent to the effective
    date of the statute. Conduct violating the statute and occurring

REFERENCES FOR POINTS IN HEADNOTES
[1] 17 Am Jur 2d, Contracts §§ 482, 497, 498, 509.
[2, 4, 5] 17 Am Jur 2d, Contracts §§ 166, 168-170.
[3] 17 Am Jur 2d, Contracts §§ 482, 496-498, 509.

after July 11, 1978, is prohibited regardless of the date of the underlying dealer contract between the parties.

2. Enactment of the dealer-agreement statute was an exercise of police power which does not unconstitutionally impair the obligation of existing contracts because prohibiting termination of a contract where no just cause exists is not the pivotal provision in an agreement whose stated purpose is to govern all sale and purchase transactions between company and dealer, and because the Legislature has the power to regulate the potential inequities inherent in the relationship between manufacturers and dealers of motor vehicles and to make the enactment effective immediately as a means of remedying abuses and preventing the evils which the statute aims to correct.

3. Defendants' notice of termination alleged that there was reasonable cause for the termination of the dealership agreement. The statute provides a method for measuring whether or not the termination was reasonable and just. Remand will afford plaintiff an opportunity to have that issue decided.

Reversed and remanded.

1. CONTRACTS — MOTOR VEHICLE DEALERSHIP AGREEMENTS — TERMINATION — GOOD CAUSE — WRITTEN NOTICE — STATUTES.

Dealership agreements between motor vehicle manufacturers and dealers of their motor vehicles, notwithstanding the terms, provisions, or conditions of the dealer agreement, require that the parties to the agreement act with good cause and in accordance with reasonable standards of fair dealing when terminating, cancelling, or failing to renew a dealership agreement; termination by a manufacturer or distributor requires 60 days written notice and the manufacturer or distributor has the burden of proof to show good cause for its termination, cancellation or failure to renew (MCL 445.522; MSA 19.856[2]).

2. STATUTES — MOTOR VEHICLE DEALERSHIP AGREEMENTS — TERMINATION — EFFECTIVE DATE OF STATUTE — RETROACTIVE APPLICATION.

The inclusion of the words "notwithstanding the terms, provisions, or conditions of a dealer agreement" in the dealer-agreement statute, along with the language giving the statute immediate effect, indicates that the Legislature intended the act to have immediate effect regarding the practices it proscribes; therefore, where written notice of termination was before the effective date of the statute but termination was to take place on a date after the statute was enacted, the termination occurred subsequent to the effective date of the statute and there is

no retroactivity problem because the statute prohibits termination of the contract, not just notice of termination (MCL 445.522; MSA 19.856[2]).

3. CONTRACTS — MOTOR VEHICLE DEALERSHIP AGREEMENTS — TERMINATION — COMMON-LAW RULE — GOOD FAITH — STATUTORY RULE — REASONABLE CAUSE.

Common law provides that termination of a contract at the option of a party is valid, but the option may be exercised only in good faith where the relationship is commercial and does not involve fancy, taste, sensibility, judgment, or other personal features; therefore, although the dealer-agreement statute requiring notice in writing and reasonable cause for termination of a dealership agreement is new, it merely involves an old concept in slightly different language.

4. STATUTES — MOTOR VEHICLE DEALERSHIP CONTRACTS — LEGISLATIVE INTENT — REMEDIAL PURPOSE — EFFECTIVE DATE OF STATUTE.

The remedial purpose of the dealer-agreement statute indicates that the Legislature intended to make the effective date of the statute controlling and its provisions applicable to contracts in existence before the effective date of the statute as well as those entered into thereafter.

5. CONTRACTS — MOTOR VEHICLE DEALERSHIP AGREEMENTS — PURPOSE OF AGREEMENTS — TERMINATION — POLICE POWER — STATUTES — CONSTITUTIONAL ACT.

The purpose of a dealership agreement is to govern all sales and purchase transactions between company and dealer; therefore, prohibiting termination of a dealership contract where no just cause for termination exists is not the pivotal provision in the agreement because it does not destroy the central undertaking; enactment of the dealer-agreement statute was an exercise of police power which does not unconstitutionally impair the obligation of such existing contracts because the Legislature has the power to regulate the potential inequities inherent in the relationship between manufacturers and dealers of motor vehicles and to make the enactment effective immediately as a means of remedying abuses and preventing the evils which the statute aims to correct.

*Butzel, Long, Gust, Klein & Van Zile* (by *John B. Weaver, Richard E. Rassel* and *David K. Easlick, Jr.),* for plaintiffs.

*Davidson, Gotshall, Kohl, Secrest, Wardle, Lynch & Clark* (by *William P. Hampton* and *Laurel A. Ross),* for defendant.

Before: BASHARA, P.J., and BEASLEY and J. C. DANER,* JJ.

BEASLEY, J. Since 1966, Anderson's Vehicle Sales, Inc., has been the sole dealer in Oakland, Macomb and Wayne Counties for OMC-Lincoln's line of Cushman light industrial vehicles under a dealer agreement which ran from year to year. On July 5, 1978, OMC-Lincoln and its parent corporation, Outboard Marine Corporation, terminated the dealer agreement upon 30-day written notice as provided under the terms of the agreement, and stated the termination was effective August 5, 1978. On July 11, 1978, the Legislature enacted, effective immediately, a new dealer-agreement statute requiring 60 days written notice and cause as prerequisites for valid termination.

Anderson's Vehicle Sales, Inc., and William Anderson, president of Anderson's Vehicle Sales, Inc., individually, promptly started suit and obtained an *ex-parte* injunction restraining OMC-Lincoln and Outboard Marine Corporation from putting the termination into effect. After a full hearing, the trial court dissolved the injunction and held that the new statute was not retroactive in its application and, therefore, did not apply to the termination. In accordance with that ruling, the trial court held that, on its face, the termination was in accordance with the dealer agreement and, thus, effective. Plaintiffs appeal by leave granted, and the injunction was peremptorily restored by this Court pending determination of the appeal.

* Circuit judge, sitting on the Court of Appeals by assignment.

We reverse the finding of the trial court and remand the case for hearing on the merits.

The new dealer-agreement statute (MCL 445.522; MSA 19.856[2]) reads:

"Sec. 2. (1) Notwithstanding the terms, provisions, or conditions of a dealer agreement, the parties to the agreement, in performing, dealing, or complying with the terms, provisions, or conditions of a dealer agreement or in terminating, canceling, or failing to renew a dealer agreement, shall act with good cause and in accordance with reasonable standards of fair dealing.

* * *

"(3) Notwithstanding the terms, provisions, or conditions of a dealer agreement, a manufacturer or distributor shall not terminate, cancel or fail to renew a dealership agreement without giving at least 60 days' written notice of the termination for good cause shown. In a case where there is fraud, insolvency, closed doors, or failure to function in the ordinary course of business, a manufacturer shall give at least 15 days' written notice. Upon a manufacturer's or distributor's termination, cancellation, or failure to renew a dealership agreement, the burden of proof to show the manufacturer's or distributor's acting with good cause shall be on the manufacturer or distributor."

We find there is no retroactivity problem with the statute in that it prohibits the "termination" of the contract and not just the "notice of termination". Termination took place August 5, 1978, and the statute had taken effect July 11, 1978; thus, the termination of the dealer agreement occurred subsequent to the effective date of the statute. Further, the inclusion in the statute of the words "Notwithstanding the terms, provisions, or conditions of a dealer agreement * * *", along with the language giving the statute immediate effect, indicates that the Legislature intended the act to have

immediate effect regarding the practices that are proscribed.[1]

The statute recognizes the economic disparity that usually exists between manufacturers and dealers of motor vehicles. In *New Motor Vehicle Board of the State of California v Orrin W Fox Co,*[2] the United States Supreme Court quoted from the Senate report as follows:

" 'Dealers are with few exceptions completely dependent on the manufacturer for their supply of cars. When the dealer has invested to the extent required to secure a franchise, he becomes in a real sense the economic captive of his manufacturer. The substantial investment of his own personal funds by the dealer in the business, the inability to convert easily the facilities to other uses, the dependence upon a single manufacturer for supply of automobiles, and the difficulty of obtaining a franchise from another manufacturer all contribute toward making the dealer an easy prey for domination by the factory. On the other hand, from the standpoint of the automobile manufacturer, any single dealer is expendable. The faults of the factory-dealer system are directly attributable to the superior market position of the manufacturer.' Senate Rep. No. 2073, p. 2, Automobile Dealers Day in Court, 84th Cong, 2d Sess, 195. See also S. MacAulay, Law and the Balance of Power: The Automobile Manufacturers and Their Dealers (Russell Sage 1966)."

Although this statute requiring notice in writing and reasonable cause for termination is new in Michigan, under common law, defendants' conduct may also have been subject to scrutiny.[3] In *J R Watkins Co v Rich,*[4] the Court stated:

---

[1] See, *Briggs v Campbell, Wyant & Cannon Foundry Co,* 379 Mich 160, 164; 150 NW2d 752 (1967).

[2] 439 US 96, 100, fn 4; 99 S Ct 403; 58 L Ed 2d 361 (1978).

[3] See, *Murphy v Seed-Roberts Agency, Inc,* 79 Mich App 1; 261 NW2d 198 (1977).

[4] 254 Mich 82, 84-85; 235 NW 845 (1931).

"A provision in a contract for termination at the
option of a party is valid. But where the relationship is
commercial and does not involve fancy, taste, sensibil-
ity, judgment, or other personal features, the option
may be exercised only in good faith. *Cummer v Butts,*
40 Mich 322 (29 Am Rep 530) [1879]; *Brucker v Rail-
road Co,* 166 Mich 330 [130 NW 822 (1911)], *Holton v
Monarch Motor Car Co,* 202 Mich 271 [168 NW 539
(1918)]; *Brown v Board of Education,* 117 Kan 256 (231
Pac 72) [1924]; *Bishop v Bloomington Canning Co,* 307
Ill 179 (138 NE 597) [1923]; 13 CJ, p 607."

Thus, it can be argued that in prohibiting termi-
nation except for cause the new statute merely
embodies an old concept in slightly different lan-
guage.

Defendants argue that the act applies only to
contracts entered into after the July 11, 1978,
effective date of the statute. To hold with defen-
dants' position is untenable. For the Legislature to
say that contracts in existence before the effective
date could be terminated in violation of the terms
of the statute, but ones entered into a day later
were subject to all the provisions of the statute,
would fly in the face of the remedial purposes of
the act. We do not believe the Legislature so
intended.

In *McAvoy v H B Sherman Co,*[5] the Supreme
Court considered the retroactive effect of legisla-
tion in the worker's compensation law. Carriers
and employers argued that the application of the
amendatory language of 1975 PA 34 (MCL 418.862;
MSA 17.237[862]) to cases involving injuries incur-
red or appeals taken by employees before the
effective date of the act constituted an unconstitu-
tional impairment of contractual obligations.[6] The

---

[5] 401 Mich 419; 258 NW2d 414 (1977).

[6] US Const, art 1, § 10; Mich Const 1963, art 1, § 10.

Court held, citing *Lahti v Fosterling*,[7] that employers have no vested right or contract right that prohibits the Legislature from changing the remedies afforded employees under the worker's compensation laws.

In the case at bar, we find the date of the underlying contract between the parties to be irrelevant. The statute regulates conduct occurring after the effective date of the legislation. Conduct violating the statute and occurring after July 11, 1978, is prohibited.

Defendants also claim that the act unconstitutionally impairs substantial existing contractual rights in that it destroys the central undertaking of plaintiffs' and defendants' contract.[8] Prohibiting termination of a contract where no just cause for termination exists is not the pivotal provision in an agreement whose stated purpose was to "govern all sale and purchase transactions * * * between company and dealer".

In *Home Building & Loan Ass'n v Blaisdell*,[9] the United States Supreme Court quoted Justice Holmes, and went on to state:

" 'One whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the State by making a contract about them. The contract will carry with it the infirmity of the subject matter.'

* * *

"The argument is pressed that in the cases we have cited the obligation of contracts was affected only incidentally. This argument proceeds upon a misconception. The question is not whether the legislative action affects contracts incidentally, or directly or indirectly, but

---

[7] 357 Mich 578; 99 NW2d 490 (1959).

[8] US Const, Art 1, § 10; Mich Const 1963, art 1, § 10.

[9] 290 US 398, 437-440; 54 S Ct 231; 78 L Ed 413 (1934).

whether the legislation is addressed to a legitimate end and the measures taken are reasonable and appropriate to that end.

\* \* \*

"Whatever doubt there may have been that the protective power of the State, its police power, may be exercised—without violating the true intent of the provision of the Federal Constitution—in directly preventing the immediate and literal enforcement of contractual obligations by a temporary and conditional restraint, where vital public interests would otherwise suffer, was removed by our decisions relating to the enforcement of provisions of leases during a period of scarcity of housing."

To say that this exercise of the police power unconstitutionally impairs the obligation of existing contracts is to ignore the lessons of the last 45 years; *Blaisdell* holds otherwise.

We find that the Legislature has the power to regulate the potential inequities inherent in the relationship between manufacturers and dealers of motor vehicles, and that the dealer-agreement statute affords a means for remedying the same. Support for this position comes in the United States Supreme Court's upholding of a similar scheme with an identical purpose in *New Motor Vehicle Board of California v Orrin W Fox Co, supra.* While the issue confronting the United States Supreme Court was more narrow than the issue presented here, the Court recognized the broad legislative powers inherent in any scheme to regulate supposed abuses. The Court said:

"At least since the demise of the concept of 'substantive due process' in the area of economic regulation, this Court has recognized that, '[l]egislative bodies have broad scope to experiment with economic problems

* * *.' *Ferguson v Skrupa,* 372 US 726, 730 [83 S Ct 1028; 10 L Ed 2d 93] (1963). States may, through general ordinance, restrict the commercial use of property, see *Euclid v Ambler Realty Co,* 272 US 365 [47 S Ct 114; 71 L Ed 303] (1926), and the geographical location of commercial enterprises, see *Williamson v Lee Optical Co,* 348 US 483, 491 [75 S Ct 461; 99 L Ed 563] (1955). Moreover, '[c]ertain kinds of business may be prohibited; and the right to conduct a business, or to pursue a calling, may be conditioned * * * [S]tatutes prescribing the terms upon which those conducting certain businesses may contract, or imposing terms if they enter into agreements, are within the state's competency.' *Nebbia v New York,* 291 US 502, 528 [54 S Ct 505; 78 L Ed 940] (1934).

"In particular, the California Legislature was empowered to subordinate the franchise rights of automobile manufacturers to the conflicting rights of their franchisees where necessary to prevent unfair or oppressive trade practices. '[S]tates have power to legislate against what are found to be injurious practices in their internal commercial and business affairs, so long as their laws do not run afoul of some specific federal constitutional prohibition, or of some valid federal law * * *. [T]he due process clause is [not] to be so broadly construed that the Congress and state legislatures are put in a straitjacket when they attempt to suppress business and industrial conditions which they regard as offensive to the public welfare.' *Lincoln Union v Northwestern Co,* 335 US 525, 536-537 [69 S Ct 251; 93 L Ed 212] (1949). See also *North Dakota Board of Pharmacy v Snyder's Drug Stores, Inc,* 414 US 156 [94 S Ct 407; 38 L Ed 2d 379] (1973); *Ferguson v Skrupa, supra, Williamson v Lee Optical Co, supra.* "[10]

---

[10] 439 US 96, 106-107; 99 S Ct 403; 58 L Ed 2d 361 (1978). However, this view is not unanimous; *e.g., Shell Oil Co v Marinello,* 63 NJ 402; 307 A2d 598 (1973), *Ruiz v Economics Laboratory, Inc,* 274 F Supp 14 (D Puerto Rico, 1967), *Superior Motors, Inc v Winnebago Industries, Inc,* 359 F Supp 773 (D SC, 1973), *Willys Motors, Inc v Northwest Kaiser-Willys, Inc,* 142 F Supp 469 (D Minn, 1956), *Clifford Jacobs Motors, Inc v Chrysler Corp,* 357 F Supp 564 (SD Ohio, 1973), among others. Also see, Anno: *Validity and construction of state statutes forbidding area price discrimination,* 67 ALR3d 26, § 6 (1973).

Certainly, that broad legislative power includes the power to make the enactment effective immediately so as to prevent the evils which the statute aims to correct.

In this case, defendants' notice of termination alleged that there was reasonable cause for the termination. The statute provides a method for measuring whether or not the termination was reasonable and just. Remand will afford plaintiff an opportunity to have that issue decided.

Reversed and remanded.