PUNG v GENERAL MOTORS CORPORATION

Docket No. 190842. Submitted June 11, 1997, at Lansing. Decided November 14, 1997, at 9:25 A.M. Leave to appeal sought.

Roger L. Pung, M&M Chevrolet, Inc., Archie Lee MacGillivray, and Archie Oldsmobile/AMC, Inc., brought an action in the Isabella Circuit Court against General Motors Corporation, alleging violations of the Michigan dealer act (MDA), MCL 445.1561 *et seq.*; MSA 19.856(21) *et seq.*, and tortious interference with contract after the defendant refused to approve a proposed purchase by M&M Chevrolet, Inc., of the assets of Archie Oldsmobile/AMC, Inc. The defendant challenged the standing of M&M Chevrolet, Inc., to bring an action under the MDA and moved for summary disposition of the claim of tortious interference with contract. The court, Paul H. Chamberlain, J., ruled against the defendant with respect to the standing issue and the motion for summary disposition of the claim of tortious interference with contract. The defendant appealed by leave granted.

The Court of Appeals *held*:

1. The MDA separately defines "new motor vehicle dealer" and "proposed new motor vehicle dealer" and gives standing to bring an action to new motor vehicle dealers, but not to proposed new motor vehicle dealers. In this case, M&M Chevrolet, Inc., although already a dealer of the defendant by virtue of an agreement covering its dealership, is a proposed new motor vehicle dealer with respect to the sale of the assets of Archie Oldsmobile/AMC, Inc., and therefore lacks standing to bring an action under the MDA concerning the sale.

2. The trial court erred in refusing to dismiss the claim of tortious interference with contract. In refusing its consent to the proposed sale, the defendant did not interfere with the contract between M&M Chevrolet, Inc., and Archie Oldsmobile/AMC, Inc., but merely exercised its right to withhold its consent.

Reversed and remanded for entry of summary disposition in favor of the defendant.

1. Automobiles — Michigan Dealer Act — New Motor Vehicle Dealers — Proposed New Motor Vehicle Dealers — Standing.

The Michigan dealer act separately defines "new motor vehicle dealer" and "proposed new motor vehicle dealer" and grants standing to bring an action under the act to new motor vehicle dealers, but not to proposed new motor vehicle dealers (MCL 445.1565, 445.1580, 445.1581; MSA 19.856[25], 19.856[40], 19.856[41]).

2. AUTOMOBILES — MICHIGAN DEALER ACT — NEW MOTOR VEHICLE DEALERS — PROPOSED NEW MOTOR VEHICLE DEALERS.

A new motor vehicle dealer seeking to purchase the assets of another new motor vehicle dealer, both being dealers of the same automobile manufacturer, is for purposes of the Michigan dealer act a proposed new motor vehicle dealer with respect to the sale (MCL 445.1565; MSA 19.856[25]).

*Morganstern, MacAdams & De Vito* (by *Stanley Morganstern* and *Christopher M. De Vito*) (*Lynch, Gallagher, Lynch & Martineau* (by *Sue A. Jeffers*, of Counsel), for the plaintiffs.

*Dykema Gossett, PLLC* (by *Dennis M. Haffey*) (*Lee A. Schutzman*, of Counsel), for the defendant.

Before: GRIBBS, P.J., and SAWYER and YOUNG, JJ.

SAWYER, J. Defendant appeals by leave granted from an order of the circuit court denying its motion for summary disposition. We reverse.

Plaintiff M&M Chevrolet, Inc., entered into an agreement to purchase the assets of plaintiff Archie Oldsmobile/AMC, Inc. Because both parties were franchisees of General Motors Corporation (GMC), the agreement was expressly conditioned on approval by GMC. GMC declined to give its approval and plaintiffs thereafter brought this action. Defendant challenged M&M's standing to bring an action under the Michigan dealer act (MDA), MCL 445.1561 *et seq.*; MSA 19.856(21) *et seq.*   The trial court concluded that M&M did have standing because it had a dealer relationship with GMC at the time it entered into the asset

purchase agreement. The trial court also ruled that plaintiffs had sufficiently pleaded a claim of tortious interference with contract.

We first turn to the question whether M&M has standing under the MDA as a prospective dealership purchaser inasmuch as it is already a GMC dealer under an unrelated dealership agreement. We agree with defendant that it does not.

Plaintiffs appear to agree that prospective dealers generally do not have standing under the MDA. Plaintiffs, however, argue that M&M is not merely a prospective dealer, but is an existing dealer seeking to expand its product line. As an existing dealer, plaintiffs argue, M&M has standing under the MDA. We disagree.

The MDA separately defines "new motor vehicle dealer" and "proposed new motor vehicle dealer." MCL 445.1565; MSA 19.856(25). However, the statute gives standing to sue only to new motor vehicle dealers, not proposed new motor vehicle dealers. See MCL 445.1580; MSA 19.856(40) and MCL 445.1581; MSA 19.856(41). Indeed, the act makes manufacturers liable only for the damages suffered by a new motor vehicle dealer. MCL 445.1580(2); MSA 19.856(40)(2). This legislative scheme, in our opinion, clearly reflects a legislative intent to protect existing dealerships, but not prospective new dealers.

Such a distinction by the Legislature is reasonable. First, there is no right to be a dealer for defendant, or any other manufacturer for that matter. Unless defendant is engaging in discriminatory conduct prohibited by a civil rights statute, an issue not present here, defendant is free to decline to extend a dealership to an applicant. Simply put, defendant is not obli-

gated to allow someone to sell its vehicles merely because the applicant desires to do so.

An existing dealership, on the other hand, is not quite in the same position. The existing dealership has made an investment, of both time and money, in an existing business. Furthermore, while the dealership is wholly dependent on the franchise from the manufacturer, the manufacturer can easily exist without any individual dealership. See *Anderson's Vehicle Sales, Inc, v OMC-Lincoln*, 93 Mich App 404, 409; 287 NW2d 247 (1979). Because of this economic domination, the MDA is designed to protect dealerships. *Id.*

However, because prospective dealerships have not yet made that investment, it is reasonable for the Legislature to determine that they do not need to be protected. In other words, the MDA is designed to prevent a manufacturer from abusing those with whom it has chosen to do business, but does not abrogate the manufacturer's right to choose with whom to do business.

With respect to M&M in this situation, we believe that M&M must be treated as a prospective new dealership. The fact that it is an existing dealership has nothing to do with its proposed purchase of Archie Oldsmobile's assets. M&M would be in the same position that it otherwise would be had Archie Oldsmobile never decided to sell. Defendant's decision in no way restricts or impedes M&M's ability to exercise and enjoy its existing franchise agreement. The fact that it cannot expand its business by taking over the Archie Oldsmobile dealership is no different than if another company, not currently a vehicle dealer, sought to purchase Archie Oldsmobile and defendant declined to grant it the franchise. In short, the MDA

provides no remedy to an unsuccessful proposed purchaser, regardless of whether it is an existing dealership or not.

In sum, because the transaction at issue here does not involve M&M's rights under its existing dealership agreement with defendant, its status as a new vehicle dealer under that existing dealership agreement is irrelevant to this case. Rather, it is in the same situation as any other prospective new vehicle dealer, a group that has no standing under the MDA and to whom the MDA grants no remedies.

Next, defendant argues that the trial court erred in denying its motion for summary disposition of the claim of tortious interference with contract. We agree. Defendant did not interfere with a contract between plaintiffs. Rather, defendant's consent was necessary for that contract to be valid. Defendant merely exercised its right to withhold its consent. See *Blair v General Motors Corp*, 838 F Supp 1196 (WD Ky, 1993).

Reversed and remanded to the trial court with instructions to enter an order of summary disposition in favor of defendant consistent with this opinion. We do not retain jurisdiction. Defendant may tax costs.