573 N.W.2d 80 (1997)
Roger L. PUNG, M & M Chevrolet, Inc., Archie Lee MacGillivray and Archie Oldsmobile/AMC, Inc., Plaintiffs-Appellees,
v.
GENERAL MOTORS CORPORATION, Defendant-Appellant.
Docket No. 190842.
Court of Appeals of Michigan.
Submitted June 11, 1997, at Lansing.
Decided November 14, 1997, at 9:25 a.m.
Released for Publication February 10, 1998.
*81 Morganstern, MacAdams & De Vito by Stanley Morganstern and Christopher M. De Vito, Cleveland, OH (Lynch, Gallagher, Lynch & Martineau by Sue A. Jeffers, Mt. Pleasant, of counsel), for plaintiffs-appellees.
Dykema Gossett, PLLC by Dennis M. Haffey, Bloomfield Hills (Lee A. Schutzman, Detroit, of counsel), for defendant-appellant.
Before GRIBBS, P.J., and SAWYER and YOUNG, JJ.
SAWYER, Judge.
Defendant appeals by leave granted from an order of the circuit court denying its motion for summary disposition. We reverse.
Plaintiff M & M Chevrolet, Inc., entered into an agreement to purchase the assets of plaintiff Archie Oldsmobile/AMC, Inc. Because both parties were franchisees of General Motors Corporation (GMC), the agreement was expressly conditioned on approval by GMC. GMC declined to give its approval and plaintiffs thereafter brought this action. Defendant challenged M & M's standing to bring an action under the Michigan dealer act (MDA), M.C.L. § 445.1561 et seq.; M.S.A. § 19.856(21) et seq. The trial court concluded that M & M did have standing because it had a dealer relationship with GMC at the time it entered into the asset purchase agreement. The trial court also ruled that plaintiffs had sufficiently pleaded a claim of tortious interference with contract.
We first turn to the question whether M & M has standing under the MDA as a prospective dealership purchaser inasmuch as it is already a GMC dealer under an unrelated dealership agreement. We agree with defendant that it does not.
Plaintiffs appear to agree that prospective dealers generally do not have standing under the MDA. Plaintiffs, however, argue that M & M is not merely a prospective dealer, but is an existing dealer seeking to expand its product line. As an existing dealer, plaintiffs argue, M & M has standing under the MDA. We disagree.
The MDA separately defines "new motor vehicle dealer" and "proposed new motor vehicle dealer." M.C.L. § 445.1565; M.S.A. § 19.856(25). However, the statute gives standing to sue only to new motor vehicle dealers, not proposed new motor vehicle dealers. See M.C.L. § 445.1580; M.S.A. § 19.856(40) and M.C.L. § 445.1581; M.S.A. § 19.856(41). Indeed, the act makes *82 manufacturers liable only for the damages suffered by a new motor vehicle dealer. M.C.L. § 445.1580(2); M.S.A. § 19.856(40)(2). This legislative scheme, in our opinion, clearly reflects a legislative intent to protect existing dealerships, but not prospective new dealers.
Such a distinction by the Legislature is reasonable. First, there is no right to be a dealer for defendant, or any other manufacturer for that matter. Unless defendant is engaging in discriminatory conduct prohibited by a civil rights statute, an issue not present here, defendant is free to decline to extend a dealership to an applicant. Simply put, defendant is not obligated to allow someone to sell its vehicles merely because the applicant desires to do so.
An existing dealership, on the other hand, is not quite in the same position. The existing dealership has made an investment, of both time and money, in an existing business. Furthermore, while the dealership is wholly dependent on the franchise from the manufacturer, the manufacturer can easily exist without any individual dealership. See Anderson's Vehicle Sales, Inc., v. OMC-Lincoln, 93 Mich.App. 404, 409, 287 N.W.2d 247 (1979). Because of this economic domination, the MDA is designed to protect dealerships. Id.
However, because prospective dealerships have not yet made that investment, it is reasonable for the Legislature to determine that they do not need to be protected. In other words, the MDA is designed to prevent a manufacturer from abusing those with whom it has chosen to do business, but does not abrogate the manufacturer's right to choose with whom to do business.
With respect to M & M in this situation, we believe that M & M must be treated as a prospective new dealership. The fact that it is an existing dealership has nothing to do with its proposed purchase of Archie Oldsmobile's assets. M & M would be in the same position that it otherwise would be had Archie Oldsmobile never decided to sell. Defendant's decision in no way restricts or impedes M & M's ability to exercise and enjoy its existing franchise agreement. The fact that it cannot expand its business by taking over the Archie Oldsmobile dealership is no different than if another company, not currently a vehicle dealer, sought to purchase Archie Oldsmobile and defendant declined to grant it the franchise. In short, the MDA provides no remedy to an unsuccessful proposed purchaser, regardless of whether it is an existing dealership or not.
In sum, because the transaction at issue here does not involve M & M's rights under its existing dealership agreement with defendant, its status as a new vehicle dealer under that existing dealership agreement is irrelevant to this case. Rather, it is in the same situation as any other prospective new vehicle dealer, a group that has no standing under the MDA and to whom the MDA grants no remedies.
Next, defendant argues that the trial court erred in denying its motion for summary disposition of the claim of tortious interference with contract. We agree. Defendant did not interfere with a contract between plaintiffs. Rather, defendant's consent was necessary for that contract to be valid. Defendant merely exercised its right to withhold its consent. See Blair v. General Motors Corp., 838 F.Supp. 1196 (W.D.Ky., 1993).
Reversed and remanded to the trial court with instructions to enter an order of summary disposition in favor of defendant consistent with this opinion. We do not retain jurisdiction. Defendant may tax costs.