**DALE BAKER OLDSMOBILE, INC.,
Plaintiff-Appellant,**

v.

**FIAT MOTORS OF NORTH AMERICA,
INC., Defendant-Appellee.**

No. 85–1094.

United States Court of Appeals,
Sixth Circuit.

Argued March 31, 1986.

Decided June 23, 1986.

* The Honorable Carl B. Rubin, United States District Judge for the Southern District of Ohio, sitting by designation.

Ray Foresman (argued), John A. Yeager, Willingham, Cote', Hanslovsky, Griffith and Foresman, P.C., East Lansing, Mich., for plaintiff-appellant.

C. William Garratt, Bloomfield Hills, Mich., Jeffrey E. Livingston (argued), Pavia & Harcourt, New York City, for defendant-appellee.

Before MARTIN and GUY, Circuit Judges, and REED, District Judge.*

RALPH B. GUY, Jr., Circuit Judge.

Plaintiff appeals the dismissal of its complaint pursuant to Fed.R.Civ.P. 12(b)(6) entered by the district court for the Western District of Michigan. The motion to dismiss was based upon defendant's contention, accepted by the district court, that Michigan's new Motor Vehicle Act, Mich. Comp.Laws § 445.1571, regulating certain aspects of distributor/dealer contracts, should be applied only prospectively, rather than retrospectively. We affirm.

The facts are basically undisputed. On September 23, 1980, plaintiff and defendant entered into a dealer sales and service agreement whereby plaintiff was to become a sales dealer and service representative for Fiat automobiles. Defendant acquired products from Carrozzeria Bertone S.p.A. and Industrie Pennenfarina S.p.A., both Italian manufacturing corporations. For various business reasons, Carrozzeria and Industrie subsequently discontinued marketing Fiat automobiles in North America and terminated defendant as a Fiat distributor. Defendant, in turn, terminated its dealer agreement with plaintiff by letter dated January 21, 1983, in accordance with paragraph 53 of the agreement permitting termination should Fiat cease to be an authorized distributor.

In the event of termination, the dealer agreement set forth the mutual rights and obligations of the parties, including provisions pertaining to the repurchase of auto-

---

* Honorable Scott Reed, United States District Court, Eastern District of Kentucky, sitting by designation.

mobiles, parts, and equipment. At the time of execution, Mich.Comp.Laws § 445.521 *et seq.* (1978 Act), the prior regulatory Act, was in force. In 1981 the Michigan Legislature replaced this statute with the Motor Vehicle Act, Mich.Comp.Laws § 445.1561, *et seq.* (1981 Act).

Plaintiff based its claim for relief on the 1981 Act, specifically section 11, which provides that upon the termination, cancellation, non-renewal, or discontinuance of any dealer agreement, the dealer shall be paid fair and reasonable compensation by the manufacturer or distributor for the following:

(a) new current model year motor vehicle inventory purchased from the manufacturer or distributor, which has not been materially altered, substantially damaged, or driven for more than 300 miles;

(b) supplies and parts inventory purchased from the manufacturer or distributor and listed in the manufacturer's or distributor's current parts catalog;

(c) equipment, furnishings and signs purchased from the manufacturer or distributor;

(d) special tools purchased from the manufacturer or distributor within three years of the date of termination, cancellation, non-renewal or discontinuance. *Id.* at § 445.1571.

Section 11 of the 1981 Act also provided that upon the termination, cancellation, non-renewal or discontinuance of a dealer agreement by the manufacturer or distributor, it shall pay to the dealer a sum equal to the current, fair rental value of its established place of business for a period of one year from the effective date of termination, cancellation, non-renewal, or discontinuance, or the remainder of the lease, whichever is less, unless the termination, etc., is the result of dealer misconduct identified in section 10(c) of the Act.[1]

Defendant moved to dismiss plaintiff's complaint, alleging that section 11 of the 1981 Act did not apply to contracts executed before the effective date of the statute and that retrospective application of section 11 would violate the contract clauses of both the Michigan and the United States Constitutions. The trial judge agreed that section 11 of the 1981 Act could not be applied retrospectively to the parties' dealer agreement.

The trial court relied on *In re Certified Questions from the United States Court of Appeals for the Sixth Circuit*, 416 Mich. 558, 331 N.W.2d 456 (1982), where the Sixth Circuit certified the following questions to the Michigan Supreme Court: whether the comparative negligence provision of the Michigan Products Liability Act applies to an action founded in negligence, breach of warranty and other misconduct; and, if so, whether it is retrospective; and, if retrospective, whether it is unconstitutional. In addressing the retrospectivity issue, the court considered four rules developed to decide this question: First, is there specific language in the new act which states that it should be given retrospective or prospective application? 416 Mich. at 570, 331 N.W.2d 456. Second, "[a] statute is not regarded as operating retrospectively [solely] because it relates to an antecedent event." *Id.* at 570–71, 331 N.W.2d 456. Third, "[a] retrospective law is one which takes away or impairs vested rights acquired under existing laws, or creates a new obligation and imposes a new duty, or attaches a new disability with respect to transactions or considerations already past." *Id.* at 571, 331 N.W.2d 456. Fourth, a remedial or procedural act which does not destroy a vested right will be given effect where the injury or claim is antecedent to the enactment of the statute. *Id.*

Judge Hillman concluded that section 11 of the Motor Vehicle Act came within rule three above; that is, because application of

---

**1.** The conduct specified in section 10(c) includes: dealer insolvency, failure to conduct business for seven consecutive days, conviction of the dealer of a felony or a crime involving dishonesty, revocation of the dealer's license or fraudulent misrepresentation. Mich.Comp. Laws § 445.1570(c).

the Act would create in defendant a new and substantial obligation and duty with respect to a transaction already past, i.e., execution of the dealer agreement, it could not be applied. In addition, while not deciding the constitutional question presented, the court noted that retrospective application of the 1981 Act would raise serious constitutional questions. Plaintiff has raised several arguments challenging the holding of the court below.

## I.

Plaintiff initially contends that the trial court erred in its determination that section 11 of the 1981 Act fell within the contemplation of "rule three" because the Act is clearly a remedial act that should be applied retrospectively under "rule four." Plaintiff maintains that the 1981 Act is undoubtedly remedial in character, as it expands the remedies available to dealers. Plaintiff asserts that Michigan cases have broadly construed the concept of "remedial statutes" to include acts like the Michigan Vehicle Act.

There are a number of Michigan cases which discuss the concept of "remedial statutes" and provide some guidance on this question. In *Guardian Depositors Corp. v. Brown*, 290 Mich. 433, 287 N.W. 798 (1939), the court discussed whether a statute permitting a third party beneficiary to directly enforce a contract applied so as to allow a mortgagee to sue the assuming grantees for a deficiency judgment where the assumption of the mortgage had occurred prior to the effective date of the statute. Prior to enactment, plaintiff had an action in equity to foreclose against the land or could have proceeded directly against the defendants *in equity* for any deficiency remaining after the sale. 290 Mich. at 440, 287 N.W. 798. Defendants argued that permitting plaintiff an unconditional right to sue them directly at law substantially affected the obligation they undertook. The supreme court noted that the new statute merely had the effect of avoiding a multiplicity of suits, and it refused to hold that a debtor could acquire a

protectible interest in forcing circuitous litigation before he could be compelled to answer for his debt. *Id.* at 443, 287 N.W. 798. Because the statute did not enlarge the duties of the defendant, application to the prior contract was permissible.

In *Rookledge v. Garwood*, 340 Mich. 444, 65 N.W.2d 785 (1954), the court addressed whether an amendment to the Workers' Compensation Act, deleting the requirement that a claimant make an election of remedies between workers' compensation benefits or a civil action against third parties potentially liable for the accident, could apply to claims arising before enactment of the statute. Noting first that the entire workers' compensation statute is remedial in nature, the court quoted the general rule from 50 Am.Jur. *Statutes* 15, at 33–34:

Legislation which has been regarded as remedial in its nature includes statutes which abridge superfluities of former laws, remedying defects therein, or mischiefs thereof implying an intention to reform or extend existing rights, and having for their purpose the promotion of justice and the advancement of public welfare and of important and beneficial public objects, such as the protection of the health, morals, and safety of society, or of the public generally. Another common use of the term "remedial statute" is to distinguish it from a statute conferring a substantive right, and to apply it to acts relating to the remedy, to rules of practice or courses of procedure, or to the means employed to enforce a right or redress an injury. It applies to a statute giving a party a remedy where he had none or a different one before.

340 Mich. at 453, 65 N.W.2d 785. Because the act did not create a new cause of action against the defendant, thereby affecting a vested or substantive right, nor did it impose a new liability upon the defendant where none existed before, the statute could be applied retrospectively as a remedial statute. *Id.* at 456, 65 N.W.2d 785. In addition, the court noted that since defendant's previous right to force an election of remedies was given by the legislature, de-

fendant could be deprived of it by subsequent legislation. In other words, no right was destroyed when the legislature restored a remedy which it had previously taken away. The change in the statute created no new cause of action and the amendment merely limited a procedural defense. *Id.* at 458, 65 N.W.2d 785.

Even more instructive is *Hansen-Snyder v. General Motors Corp.*, 371 Mich. 480, 124 N.W.2d 286 (1963). Plaintiff argued that a statute extending the time for it to perfect a mechanic's lien operated retrospectively. In agreeing, the court noted the general rule applicable to remedial statutes:

> [R]emedial statutes, or statutes related to remedies or modes of procedure, which do not create new or take away vested rights, but only operate in furtherance of a remedy for confirmation of rights already existing, do not come within the legal conception of retrospective law, or the general rule against retrospective operation of statutes. To the contrary, the statutes or amendments pertaining to procedure are generally held to operate retrospectively, where the statute or amendment does not contain language clearly showing a contrary intention.

371 Mich. at 484–85, 124 N.W.2d 286. The court considered the statute to be remedial because plaintiffs already had the statutory right to acquire a lien. The new statute affected only the procedures to perfect the lien. Furthermore, no right vested in the defendants to have the time for serving notice of intent to file the lien limited to 60 rather than 90 days. In other words, *the amendment in that regard did not affect vested or substantive rights but pertained solely to the procedure for effectuating the statutory right already existing.* 371 Mich. at 485, 124 N.W.2d 286. The court noted that no vested right could exist to keep statutory procedural law unchanged and free from amendment. *Id.*

In *Ballog v. Knight Newspapers, Inc.*, 381 Mich. 527, 164 N.W.2d 19 (1969), the issue was whether a new statute, allowing interest to be awarded from the date of filing of a complaint, applied to cases filed before the effective date of the statute. In finding that it did, the supreme court relied upon another general rule, dealing with statutes which relate to litigation costs and attorney fees, stating: "It is well settled that the question whether costs may be allowed in an action or suit, as well as the determination of the method of their computation, is governed by the law as it exists at the time of the judgment which terminates the action or suit...." 381 Mich. at 534, 164 N.W.2d 19. The court noted that this had been the rule in Michigan since *Sawyer v. Studley*, Walk.Ch. (Mich.) 153 (1843), and was based on the fact that the statute was not "of the substance of the right of action," but incident thereto. *Id.* at 535, 164 N.W.2d 19. *See also Selk v. Detroit Plastic Products*, 120 Mich.App. 135, 328 N.W.2d 15 (1982), *aff'd* 419 Mich. 1, 345 N.W.2d 184 (1984), *adhered to, clarified* 419 Mich. 32, 348 N.W.2d 652 (1984).

In contrast is *Gormley v. General Motors*, 125 Mich.App. 781, 336 N.W.2d 873 (1983). There, the court of appeals determined whether a federal statute, providing that a military pension should no longer offset the amount of unemployment benefits received, should be applied retrospectively to allow plaintiff to receive full benefits before the effective date of the statute. The court held that the statute should be applied prospectively only because it created a new right and could, therefore, not be considered remedial.

■ These cases illustrate that the statutes which are considered remedial, and thus retrospectively applicable, have affected procedural rights or rights incident to substantive rights. In this sense, remedial statutes involve procedural rights or change the procedures for effecting a remedy. They do not, however, create substantive rights that had no prior existence in law or contract. Nevertheless, plaintiff contends that the 1981 Motor Vehicle Act is remedial, acts only to supplement an existing remedy, and should be applied retrospectively under the theory of *Anderson's*

*Vehicle Sales, Inc. v. OMC-Lincoln,* 93 Mich.App. 404, 287 N.W.2d 247 (1979).

*Anderson's* dealt with the application of the 1978 dealer agreement statute, Mich. Comp.Laws § 445.522 (repealed by the 1981 Act). The parties in *Anderson's* had been acting under a dealer agreement since 1966. The agreement allowed for termination of the dealership upon 30 days written notice. On July 5, 1978, defendant sent written notification to Anderson's, stating that termination would be effective August 5, 1978. On July 11, 1978, the new dealer-agreement statute became effective, requiring 60 days written notice and cause as prerequisites for valid termination. The Michigan Court of Appeals found no retrospectivity problem in applying the statute to the contract termination, because the termination of the dealer agreement occurred after the statute went into effect. Moreover, because the statute included the words "[n]otwithstanding the terms, provisions, or conditions of a dealer agreement...." along with language giving the statute immediate effect, the court found that the legislature intended the Act to have immediate effect. Although finding that the portion of the statute requiring notice in writing and reasonable cause for termination was new in Michigan, because the common law often imposed such a requirement, arguably, the statute merely embodied an old concept in slightly different language. The court concluded that to apply the statute only to contracts entered after its effective date would "fly in the face of the remedial purposes of the act." 93 Mich.App. at 410, 287 N.W.2d 247.

The trial judge distinguished *Anderson's* on several bases. First, the statute applied in *Anderson's* included the words "notwithstanding the terms, provisions, or conditions of a dealer agreement ...", whereas section 11 of the 1981 Act sought to be applied did not contain such language. Even more significant was that several sections of the 1981 Act did contain such language. The trial judge concluded that the legislature intended these latter sections to

apply to pre-existing dealer agreements, while others were intended to apply only to agreements entered subsequent to the 1981 Act's effective date. Interpreting this omission in light of the presumption against retrospective application of a statute, the trial judge disagreed with plaintiff that the omission of the language was insignificant. Furthermore, although the *Anderson's* court viewed the 1978 Act as remedial, the trial court, relying on *Gormley,* found that the 1981 Act would take away defendant's vested contractual rights, and create new rights in plaintiff, and should therefore not be retrospectively applied.

■ We find it unnecessary to address plaintiff's challenges to the trial court's treatment of *Anderson's.* We are not bound by a decision of an intermediate state appellate court when we are convinced that the highest state court would decide differently. *Ruth v. Bituminous Casualty Corp.,* 427 F.2d 290 (6th Cir. 1970). It seems fairly clear that the court of appeals decision in *Anderson's* goes against the teachings of the cases previously discussed, and, more importantly, is contrary to the Michigan Supreme Court's subsequent opinion in *In re Certified Questions, supra.*

In determining whether the Michigan Products Liability Act should be applied to an implied warranty action accruing and sued upon prior to the enactment of the statute, but brought to trial after the effective date of the statute, the court discussed four rules to determine proper application. The first rule is that a new act should be given retrospective application when there is specific language which so states. 416 Mich. at 570, 331 N.W.2d 456. This rule is obviously inapplicable here.

The second rule is that "a statute is not regarded as operating retrospectively solely because it relates to an antecedent event." *Id.* at 570–71, 331 N.W.2d 456. This rule, too, is inapplicable.[2]

**2.** This exception was relied on by the *Anderson's* court in ruling that application of the 1978 Act

The third rule states that retrospective application of a law is improper where the law "takes away or impairs vested rights acquired under existing laws, or creates a new obligation and imposes a new duty, or attaches a new disability with respect to transactions or considerations already past." 416 Mich. at 572, 331 N.W.2d 456. The trial judge found that section 11 of the 1981 Act fell within the contemplation of rule three.

Listed under the heading of "rule three" in *In re Certified Questions* were those cases dealing with impairment of express contractual rights. Although it is true that under rule four (i.e., a remedial or procedural statute may operate retrospectively if it does not take away vested rights) the supreme court noted that the legislature may modify, limit, or even alter the remedy for enforcement of a contract without violating the rule against retrospectivity, a comparison of the cases cited under these headings reveals that section 11 properly belongs within the rule three class of cases.

The contract case which fell within rule four was *Guardian Depositors Corp. v. Brown,* 290 Mich. 433, 287 N.W. 798 (1939). As stated above, the statute in issue gave third party beneficiaries the right to sue directly to enforce a contract. Application of this statute to the *Brown* case was permissible because the statute did not enlarge the duties of the defendant, but merely changed the method of enforcement. 290 Mich. at 443, 287 N.W. 798.

In contrast, the case cited under rule three, reflecting an impermissible impairment of contractual rights, was *Byjelich v. John Hancock Mutual Life Ins. Co.,* 324 Mich. 54, 36 N.W.2d 212 (1949). Byjelich was awarded two insurance policies belonging to her husband as part of a property settlement. The statute enabling the court to assign the policies was enacted after the policies had been issued. When plaintiff presented the policies to defendant for their cash surrender value, defendant refused, contending that it was a violation of the agreement to assign the policies. The court held that the statute could not be retrospective so as to change the substance of a contract previously entered into, and that the trial judge's assignment under the statute amounted to a substantial impairment of the contract. 324 Mich. at 61, 36 N.W.2d 212. Significantly, the court noted that defendant had bargained for the insured's judgment and discretion in deciding whether the policies should be surrendered, in addition to bargaining for the nonassignment clause. *Id.*

The distinction made between these cases by the Michigan Supreme Court is entirely consistent with our earlier discussion of "remedial statutes" as those that involve procedural rights or indicate the procedures for effecting a remedy. Thus, Guardian Depositors could take advantage of the new statute and sue directly, at law, the assuming grantees, thereby attaining the same remedy by less circuitous means. In contrast, Mrs. Byjelich, who had no preexisting right in law or contract to assignment and surrender of the insurance policies, could not, by virtue of a new statute, obtain such right to the detriment of the issuer of the policies.

■ There is no doubt that application of section 11 in this case would impose substantial new duties on defendant as well as giving plaintiff *substantive* rights, neither of which existed by law or contract. Under section 11, defendant would be required to

did not result in retrospective application of a statute to a pre-existing contract, i.e., because termination was attempted after the effective date of the statute, there is no retrospectivity problem. The statute is not being applied retrospectively simply because it relates to an antecedent event, the antecedent event being execution of the contract. This rule was laid down in *Hughes v. Judges' Retirement Board,* 407 Mich. 75, 282 N.W.2d 160 (1979), where plaintiff sought increased retirement benefits under a

statute enacted after he retired. The court concluded that the statute, if applied, would be prospective only, because plaintiff only sought increased benefits from the effective date of the statute. In *In re Certified Questions,* the court made clear that the second rule was applicable only to cases related to measuring the amount of entitlement provided by a subsequent statute in part by services rendered pursuant to a prior statute. 416 Mich. at 572, 331 N.W.2d 456.

pay plaintiff a sum equivalent to the current rental value of plaintiff's place of business for one year, or, if there is a lease, the remainder of the lease, whichever is less. In addition, section 11 requires the defendant to purchase cars, parts, tools and signs under terms substantially different than those provided in the parties' agreement.

Contrary to plaintiff's argument, section 11 of the Motor Vehicle Act is remedial only in the sense that virtually all legislation is remedial; that is, the legislature has addressed what it perceives to be a problem and has attempted to resolve it. This kind of label is of no help, however, in determining the application of the statute. Rather, resort must be made to the more meaningful distinctions we have made above. The cases reveal that remedial, in this context, relates to *procedural:* statutes which determine the manner of effecting a remedy. We believe that section 11 falls squarely within the Michigan Supreme Court's rule that retrospective application of a law is improper where the law "creates a new obligation and imposes a new duty, or attaches a new disability with respect to transactions or considerations already past." *In re Certified Questions,* 416 Mich. at 572, 331 N.W.2d 456. In accordance with the authorities discussed, we believe that the Michigan Supreme Court would so rule.

## II.

■ Plaintiff has also argued that defendant had no vested rights which were impaired by the 1981 Act; that is, because termination did not occur until after the effective date of the statute, defendant's right to terminate free of penalties was inchoate until it actually sought to exercise the termination clause. Plaintiff appears to argue that defendant could be divested of its right to terminate consistent with the 1978 Act by replacing that termination procedure with the one set forth in the 1981 Act. This argument ignores the fact that defendant acquired *contract* rights at the time the parties entered the dealer agreement. Whether defendant had any vested *statutory* rights is irrelevant. Contracts rights are clearly protected under Michigan law. *In re Certified Questions,* 416 Mich. at 573, 331 N.W.2d 456.

## III.

Plaintiff also argues that the trial court erred in not giving effect to the legislature's intent that the statute apply to pre-existing dealer agreements. The trial court found that because section 11 did not begin with the language "notwithstanding any agreement," the legislature intended that this section operate prospectively. Plaintiff submits that the Act must be read as a whole, and that the Act as a whole indicates the legislature's intent that the Act be applied retrospectively. Moreover, plaintiff points out that the *Anderson's* court so held.[3]

Essentially, plaintiff again argues that because the statute is remedial, the rules

---

**3.** The *Anderson's* court also relied on two workers compensation cases, *McAvoy v. H.B. Sherman Co.,* 401 Mich. 419, 258 N.W.2d 414 (1977), and *Lahti v. Fosterling,* 357 Mich. 578, 99 N.W.2d 490 (1959), both of which support our analysis here. In *McAvoy,* the supreme court held that a statute providing that a workers' compensation claim for review filed by a carrier or employer shall not operate as a stay of payment to the claimant of 70% of the weekly benefit. The statute also provided that if the weekly benefit is reduced or rescinded by a final determination upon appeal, the employer or carrier shall be entitled to reimbursement from the Second Injury Fund for compensation paid during the appellate process in excess of the amount finally determined. The court held that retrospective application of the statute was proper because it only effectuated a procedural change; employers and carriers were required to make immediate payment pending appeal, but the substantive benefits ultimately owed, or not owed, remained the same. 401 Mich. at 459, 258 N.W.2d 414.

In *Lahti,* a statute limiting the employer's or carrier's liability for medical expenses of an injured employee to two years was amended to give the commission the discretion to extend the employer's or carrier's liability for medical expenses. The court held that the amendment merely expanded remedies already in effect. Moreover, in holding that defendant had not been deprived of a vested right, the court noted that the legislature had originally limited liability for medical expenses. "It is the general rule that that which the legislature gives, it may take away." 357 Mich. at 589, 99 N.W.2d 490. *Ac-*

of construction set forth by the supreme court presume that retrospective application is called for. As to the legislature's intention that the statute apply to pre-existing contracts, the statute is ambiguous. There is some support for the proposition that in omitting the terminology "notwithstanding any agreement," the legislature intended section 11 to apply only to subsequent contracts. On the other hand, because section 11 refers to termination of "any dealer agreement," a retrospective construction is possible.

Because the statute is ambiguous in this regard, rules of statutory construction must be utilized. The Michigan Supreme Court has repeatedly held that, in enacting legislation, the legislature is presumed to be acquainted with the court's rules of statutory construction. *Ballog,* 381 Mich. at 540, 164 N.W.2d 19. When resort is made to the rules of construction set forth in *In re Certified Questions,* specific language is required to give a new act retrospective application under rule one. To the extent that plaintiff's argument calls for application of rule four, it has been rejected above.

## IV.

Plaintiff finally argues that the trial court erred in suggesting that application of section 11 to these parties would violate the contract clause of the United States Constitution, U.S. Const. art. 1 § 10. The trial judge did not decide the question, but, in stating that statutes should be interpreted so as to avoid raising serious constitutional questions, he supported his prior analysis.

■ Without deciding the constitutional implications of applying section 11 to these parties, we agree with the trial judge that it does raise serious constitutional questions. *See Scuncio Motors, Inc. v. Subaru of New England, Inc.,* 715 F.2d 10, 13 (1st Cir.1983). A state statute, which has not been authoritatively construed by the state court, should be construed in a manner which will avoid such constitutional questions. *New York v. Ferber,* 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982).

Accordingly, the decision of the trial court is AFFIRMED.

cord: *Rookledge v. Garwood, supra.* It is also noteworthy that the court discussed at length the remedial, i.e., humanitarian purposes of the Workers' Compensation Act. 357 Mich. at 592–95, 99 N.W.2d 490.