*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0035p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————————

KIA MOTORS AMERICA, INC.,
    *Plaintiff-Appellee,*

    *v.*

    No. 12-1202

GLASSMAN OLDSMOBILE SAAB HYUNDAI,
INC., dba Glassman Kia,
    *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:11-cv-12090—Arthur J. Tarnow, District Judge.

Argued: January 24, 2013

Decided and Filed: February 7, 2013

Before: SILER, SUTTON, and McKEAGUE, Circuit Judges.

—————————————

**COUNSEL**

**ARGUED:** Lawrence F. Raniszeski, COLOMBO & COLOMBO, P.C., Bloomfield Hills, Michigan, for Appellant. Catherine E. Stetson, HOGAN LOVELLS US LLP, Washington, D.C., for Appellee. **ON BRIEF:** Lawrence F. Raniszeski, COLOMBO & COLOMBO, P.C., Bloomfield Hills, Michigan, for Appellant. Catherine E. Stetson, David M. Ginn, HOGAN LOVELLS US LLP, Washington, D.C., Jonathan T. Walton, Jr., WALTON & DONNELLY, P.C., Detroit, Michigan, for Appellee.

—————————————

**OPINION**

—————————————

McKEAGUE, Circuit Judge. The goal of every car manufacturer is to sell as many cars as possible. To accomplish this goal they need dealers, which must invest substantial resources to build attractive facilities and advertise the latest models. Superficially, dealers share the manufacturer's goal of selling as many cars as possible.

1

But their mutual objectives may diverge if the manufacturer seeks to increase sales by appointing new dealers, whose efforts may erode the sales of existing dealers. Michigan recognized this potential problem in 1981 when it enacted the Motor Dealers Act (the "Act"), which grants car dealers certain limited territorial rights, even when the dealer has a nonexclusive franchise. The application of the Act to the dealer agreement between Kia Motors America, Inc. ("Kia") and Glassman Oldsmobile Saab Hyundai, Inc. ("Glassman")[1] is at the nub of this dispute.

The Act requires car manufacturers to provide notice to an existing dealer before establishing a new dealer within a certain distance of the existing dealer's location. Receipt of notice gives the existing dealer a cause of action to challenge the proposed new dealer. Kia and Glassman entered into a Dealer Sales and Service Agreement (the "Agreement") in 1998, when the distance for notice was 6 miles. The Michigan Legislature amended the Act in 2010 to increase the distance to 9 miles (the "2010 Amendment"). Kia now intends to establish a new dealer more than 6 miles, but less than 9 miles, from Glassman's location. The district court found that the parties did not agree to comply with the 2010 Amendment and that the 2010 Amendment is not retroactive. Therefore, it concluded that the 6-mile distance applies to the parties' relationship, and Kia need not give notice to Glassman. We affirm.

## I. BACKGROUND

The facts are uncomplicated. Kia imports and distributes Kia products in the United States. Glassman is a car dealer in Southfield, Michigan. Their Agreement is a relatively simple contract. It appointed Glassman as an authorized Kia dealer. It contains provisions governing things such as sales and delivery, operation of the dealership, and service and parts. Importantly for this appeal, the Agreement clearly

---

[1]In Glassman's answer to Kia's complaint, it clarified that its name is actually Glassman Automotive Group, Inc. d/b/a Glassman Kia. Both parties stated that Glassman is incorporated in Michigan. A quick search on the Michigan Department of Licensing and Regulatory Affairs' website revealed that Glassman Oldsmobile Saab Hyundai, Inc. was one of the assumed names of Glassman Automotive Group, Inc. until 2000 (the last Oldsmobile was made in 2004). The search also revealed that Glassman Automotive Group, Inc. is incorporated in Delaware, not Michigan. Since Kia is a California corporation (we checked), we still have subject matter jurisdiction.

states that Glassman's right to sell Kia products is not exclusive. Kia "expressly reserves the unrestricted right to sell Kia Products itself and to grant others the right to sell Kia Products, whether or not in competition with [Glassman]." R. 1-2, Agreement, PageID # 17. Glassman understood that it was "not being granted an exclusive right to sell Kia products in any specified geographic area." *Id.* at PageID # 18.

Although its right to sell Kia products is nonexclusive, Glassman agreed to assume certain responsibilities in its geographic region. It agreed to "vigorously and aggressively promote, solicit and make sales of Kia Products within its [Area of Primary Responsibility]"—a location left undefined in the Agreement.[2] *Id.* at PageID # 25. However, Glassman agreed "that it has no right or interest in any [Area of Primary Responsibility] that [Kia] may designate." *Id.* Instead, in the sentence whose meaning is at issue in this appeal, the parties agreed that "*[a]s permitted by applicable law*, [Kia] may add new dealers to, relocate dealers into or remove dealers from the [Area of Primary Responsibility] assigned to [Glassman]." *Id.* (emphasis added).

Kia's right to establish a new dealer in Glassman's vicinity is unrestricted by the Agreement, but it is restricted by an anti-encroachment provision[3] in the Act. *See* Mich. Comp. Laws § 445.1576. This provision requires a car manufacturer to give notice to an existing dealer before establishing a new dealer in the same vicinity. In relevant part, the Act provides as follows:

> (2) Before a manufacturer or distributor enters into a dealer agreement establishing or relocating a new motor vehicle dealer within a *relevant market area* where the same line make is represented, the manufacturer or distributor shall give written notice to each new motor vehicle dealer of the same line make in the relevant market area of its intention to

---

[2]The Agreement says that "the [Area of Primary Responsibility] is a tool used by [Kia] to evaluate [Glassman's] performance of its obligations." R. 1-2, Agreement, PageID # 25. It "may be altered or adjusted by [Kia] at any time." *Id.* Apparently the contours of the Area of Primary Responsibility were set forth in a "business and operating plan," which was not included in the record on appeal. *See id.* at PageID # 20.

[3]"Antiencroachment or elbow-room statutes restrict the manufacturer's freedom to appoint new dealers within a specified proximity of existing dealers. The purpose of such statutes is to prevent oversaturation of an area with dealers in a particular line of cars." 2 W. Michael Garner, *Franchise and Distribution Law and Practice* § 14:32 (2012).

establish an additional dealer or relocate an existing dealer within that relevant market area.

(3) Within 30 days after receiving the notice provided for in subsection (2), or within 30 days after the end of any appeal procedure provided by the manufacturer or distributor, a new motor vehicle dealer may bring a declaratory judgment action in the circuit court for the county in which the new motor vehicle dealer is located to determine whether good cause exists for the establishing or relocating of a proposed new motor vehicle dealer. Once an action has been filed, the manufacturer or distributor shall not establish or relocate the proposed new motor vehicle dealer until the circuit court has rendered a decision on the matter. An action brought pursuant to this section shall be given precedence over all other civil matters on the court's docket.

*Id.* (emphasis added). When Kia and Glassman signed the Agreement in 1998, the "relevant market area" was defined as the area within 6 miles of the proposed new dealer. However, on August 4, 2010, the Act was amended to extend the distance to 9 miles. *See* 2010 Mich. Pub. Acts No. 139 (codified at § 445.1566(1)(a)).

Sixteen days after the 2010 Amendment became effective, Kia informed Glassman that it intended to establish a new dealer in Troy, Michigan. The new dealer would be located about 7 miles from Glassman's location (thus falling within the "relevant market area" under the 2010 Amendment, but outside the "relevant market area" when the Agreement was signed in 1998). When Glassman protested that it was entitled to notice under the Act, Kia filed a declaratory judgment action in the United States District Court for the Eastern District of Michigan. Kia sought a declaration that the 2010 Amendment did not require it to give notice to Glassman and did not give Glassman the right to protest the new dealer. Glassman filed a counter-complaint asking for the opposite declaration. The parties then filed cross-motions to dismiss and for judgment on the pleadings.

The district court granted Kia's motions and denied Glassman's motions. It concluded that when the parties used the term "applicable law" when referring to Kia's right to establish a new dealer in Glassman's Area of Primary Responsibility, they meant the law in effect in 1998 and did not intend to incorporate future changes in the law. It

further determined that the 2010 Amendment did not operate retroactively to affect a contract entered into before its enactment because the Amendment is substantive—not procedural—in nature. Kia had argued that applying the 2010 Amendment retroactively would violate the Contracts Clauses of the Michigan and United States Constitutions, but because the district court found that the 2010 Amendment was not retroactive, it did not reach this question. Glassman timely appealed.

## II. ANALYSIS

### A. Standard of Review

We review *de novo* the district court's grant or denial of a Rule 12(b)(6) motion to dismiss and a Rule 12(c) motion for judgment on the pleadings. *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549 (6th Cir. 2008).

### B. Glassman's Contract Argument

The issue in this case is whether the 2010 Amendment requires Kia to give Glassman notice. Glassman contends that it does and has advanced both a contract argument and a statutory argument to support its position. We tackle first the contract argument and ultimately find that it fails.

Glassman contends that the parties agreed to comply with subsequent changes to the Act, including the 2010 Amendment, when they stated that Kia could establish new dealers in Glassman's Area of Primary Responsibility "[a]s permitted by applicable law." As a preliminary matter, it is not at all clear that this provision is even relevant here. By its terms, it applies only when the new dealer would be located within Glassman's Area of Primary Responsibility. "Area of Primary Responsibility" is solely a contractual term and is distinct from the statutory term "relevant market area." Glassman has never explicitly asserted that the proposed new dealer would be within its Area of Primary Responsibility, and Kia has assured us that it will not. Additionally, when read in context, this phrase seems directed more toward reinforcing the nonexclusive nature of Glassman's distribution rights than toward restricting Kia's right to establish new dealers.

Furthermore, although the parties have not agreed what state's law governs their agreement,[4] it is a generally accepted rule of construction that "changes in the law subsequent to the execution of a contract are not deemed to become part of [the] agreement unless its language clearly indicates such to have been [the] intention of [the] parties." 11 Richard A. Lord, *Williston on Contracts* § 30:23 (4th ed. 1990); *see also Rutherford Farmers Coop. v. MTD Consumer Grp., Inc.*, 124 F. App'x 918, 920 (6th Cir. 2005) (applying Tennessee law and quoting *Williston*). Contracting parties are free to agree that their rights and duties will track the law as it changes, but because the terms of their bargain could be significantly altered, they must make their intent to do so clear. "[A]pplicable law" could just as easily refer to the anti-encroachment statute in effect when the contract was signed as to the current anti-encroachment statute. *Cf. Energy Reserves Grp., Inc. v. Kan. Power and Light Co.*, 459 U.S. 400, 416 (1983) (The parties agreed that "any contractual terms [were] subject to relevant present and future state and federal law.") We find here no clear indication that by saying Kia could establish new dealers "[a]s permitted by applicable law" the parties intended to incorporate future changes in the law and thus interpret that phrase to refer to the law in effect when the contract was signed.

Glassman's argument that the Agreement as a whole controverts this interpretation is alluring but ultimately fails. Glassman points out that numerous provisions in the Agreement define the parties' duties according to what the law requires. Two provisions in particular require Glassman to comply with applicable consumer-protection laws and applicable safety and emission-control laws. Kia agrees that these provisions require Glassman to comply with current laws, not just the laws in effect when the Agreement was signed. Therefore, argues Glassman, the Agreement should be interpreted to also require Kia to comply with the current anti-encroachment law.

---

[4]The Agreement provides that it shall be governed by and construed according to California law, but the parties have indicated that this choice-of-law provision might be rendered void by Michigan Compiled Laws Section 445.1573(h).

But we cannot ignore the important distinction between the provision at issue here and the other provisions that reference applicable law. Those other provisions primarily concern Glassman's responsibility, as a car dealer, to comply with generally applicable laws and regulations. In contrast, the provision at issue here directly concerns the relationship between Kia and Glassman. The 2010 Amendment would alter a key aspect of the parties' bargain—the nonexclusive nature of Glassman's distribution rights and Kia's right to establish new dealers. Amendments to consumer-protection and emission-control laws, on the other hand, alter Glassman's responsibilities *vis-à-vis* the general public; they do not significantly change the parties' bargain. Therefore, there is a fundamental difference between the provision at issue here and the other provisions that incorporate applicable law, and our interpretation does not conflict with the rest of the Agreement.

## C. Glassman's Statutory Argument

Having determined that the Agreement does not incorporate the 2010 Amendment, we turn next to Glassman's statutory argument. We must decide whether the 2010 Amendment operates retroactively to change Kia's obligations under the Agreement. We conclude that it does not.

In Michigan, the question of whether a statute should be applied retroactively or only prospectively is a question of legislative intent. *Frank W. Lynch & Co. v. Flex Technologies, Inc.*, 624 N.W.2d 180, 182 (Mich. 2001). But there is a presumption that statutes operate only prospectively "unless the contrary intent is clearly manifested." *Id.* (quotation omitted). This presumption holds "especially true if retroactive application of a statute would impair vested rights, create a new obligation and impose a new duty, or attach a disability with respect to past transactions." *Id.* The Michigan Supreme Court has repeatedly observed that the Michigan Legislature "knows how to make clear its intention that a statute apply retroactively," so the absence of express retroactive language is a strong indication that the Legislature did not intend a statute to apply retroactively. *See Brewer v. A.D. Transport Express, Inc.*, 782 N.W.2d 475, 478 (Mich. 2010) (quoting *Frank W. Lynch & Co.*, 624 N.W.2d at 183). The "requirement that the

Legislature make its intention clear" "is especially true when a new statutory provision affects contractual rights, an area 'in which predictability and stability are of prime importance.'" *Frank W. Lynch & Co.*, 624 N.W.2d at 184 (quoting *Landgraf v. USI Film Prod.*, 511 U.S. 244, 271 (1994)).

There is an exception to the presumption against retroactivity when a statute can be classified as remedial or procedural. *Id.* at 183. "[S]tatutes which operate in furtherance of a remedy or mode of procedure and which neither create new rights nor destroy, enlarge, or diminish existing rights are generally held to operate retrospectively unless a contrary legislative intent is manifested." *Id.* (quotation omitted). Although Michigan courts describe the exception as encompassing laws that are either remedial *or* procedural, in this context the terms essentially mean the same thing—laws that are procedural in nature and do not create or destroy substantive rights. *See id.*; *see also Dale Baker Oldsmobile, Inc. v. Fiat Motors of North America, Inc.*, 794 F.2d 213, 217 (6th Cir. 1986) ("[R]emedial statutes involve procedural rights or change the procedures for effecting a remedy. They do not, however, create substantive rights that had no prior existence in law or contract.").

We have previously determined that another section of the Motor Dealers Act operates prospectively only. *See Dale Baker Oldsmobile*, 794 F.2d at 219-20. In *Dale Baker Oldsmobile*, the issue was whether a section that expanded a dealer's rights upon the termination of a dealer agreement applied retroactively to contracts executed before the enactment of the statute. *Id.* at 215. Among other things, the new section required the manufacturer to pay the dealer an amount equal to one year's rental value of the dealership premises. *Id.* After reviewing several Michigan cases dealing with issues of retroactivity, we concluded that the new section would impose substantive duties on the manufacturer and award substantive rights to the dealer and thus should not be applied retroactively. *Id.* at 219-20.

The 2010 Amendment is silent as to whether it operates retroactively or only prospectively.[5] There is thus no clear legislative intent that the Amendment should be applied retroactively. The only remaining question, then, is whether the exception for procedural or remedial laws applies. In other words, is the 2010 Amendment substantive?

Glassman argues that the 2010 Amendment is procedural because it constituted a "minor change" to the definition of "relevant market area" and "did not impose any new legal duties on Kia that had not already existed in the prior version nor did it create new substantive rights for an existing dealer, such as Glassman." Appellant Br. 32, 37. For support, it cites a decision from the Michigan Supreme Court in which that court held that an amendment to the Mechanics' Lien Act extending the time for filing a lien from 60 days to 90 days was procedural and thus applied retroactively. *See Hansen-Snyder Co. v. Gen. Motors Corp.*, 124 N.W.2d 286, 288 (Mich. 1963). The court reasoned that since the right to acquire a lien was not affected, the only change "pertained solely to [the] procedure for effectuating the statutory right already existing." *Id.*

But the amendment in *Hansen-Snyder* is not analogous to the 2010 Amendment. Before the Amendment, the statute allowed Kia to establish a new dealer more than six miles from Glassman without restriction. After the Amendment, Kia must provide notice before doing so, and that notice allows Glassman to bring a declaratory judgment action to protest the new dealer. Clearly, the Amendment imposes a new substantive duty and provides a new substantive right that did not previously exist. Rather than change the mechanics or time frame for objecting to a new dealer, the Amendment gives Glassman the substantive right to object. Therefore, it cannot be viewed as procedural, and the presumption against retroactivity applies.

---

[5]In an amendment to another section of the Act, enacted on the same day as the 2010 Amendment, the Legislature explicitly provided that the amendment would apply to dealer agreements in existence on the effective date of the amendment. *See* 2010 Mich. Pub. Act No. 141 (codified at Mich. Comp. Laws § 445.1574(1)(x)).

Before leaving the issue of retroactivity we must briefly dispose of Glassman's two remaining arguments, both of which are similar to arguments we have rejected in previous opinions. *First*, Glassman disputes that a retroactivity issue even exists in this case. Since Kia sought to establish the new dealer after the 2010 Amendment, argues Glassman, requiring Kia to comply with the Amendment would require applying it prospectively only. However, this argument ignores the fact that the Amendment affects Kia's rights under a contract that predates the Amendment, and we therefore rejected it in a prior case. *See Bob Tatone Ford, Inc. v. Ford Motor Co.*, 197 F.3d 787, 792 (6th Cir. 1999) (applying Ohio law). A statute operates retroactively when it "'takes away or impairs vested rights acquired under existing laws.'" *Landgraf*, 511 U.S. at 269 (quoting *Soc'y for Propagation of the Gospel v. Wheeler*, 22 F. Cas. 756, 767 (No. 13,156) (C.C.D.N.H. 1814) (Story, J.)). To require Kia to comply with the 2010 Amendment would clearly require us to apply the Amendment retroactively because it would take away Kia's previously unrestricted contractual right to establish a new dealer more than 6 miles from Glassman. *See Dale Baker Oldsmobile*, 794 F.2d at 219-20 (indicating that a statute would operate retroactively if it impacted a pre-existing contract, even though the conduct it regulated post-dated the statute); *Byjelich v. John Hancock Mut. Life Ins. Co.*, 36 N.W.2d 212, 215 (Mich. 1949) (same).[6]

*Second*, Glassman disputes that Kia has a vested contractual right that would be affected by the 2010 Amendment. It argues that Kia's right to establish a new dealer was just a statutory right, which according to Glassman is not a vested right. But this argument ignores the Agreement, and we have rejected it before. *See Dale Baker Oldsmobile*, 794 F.2d at 220 ("This argument ignores the fact that defendant acquired *contract* rights at the time the parties entered the dealer agreement."). The Agreement expressly gave Kia the right to establish new dealers. Since in 1998 the law only restricted Kia's right to establish new dealers within 6 miles of Glassman's location, Kia

---

[6]Glassman cites two cases from the Michigan Court of Appeals for this point, neither of which are persuasive or merit discussion. We have already declined to follow the approach taken in *Anderson's Vehicle Sales, Inc. v. OMC-Lincoln*, 287 N.W.2d 247 (Mich. Ct. App. 1979). *See Dale Baker Oldsmobile*, 794 F.2d at 218. The issue in *LaFontaine Saline Inc. v. Chrysler Group LLC*, No. 307148, 2012 Mich. App. Lexis 2378 (Mich. Ct. App. Nov. 27, 2012) was whether a letter of intent qualifies as a dealer agreement, and the court never addressed a potential retroactivity issue.

had an unrestricted contractual right to establish new dealers outside that radius. Clearly the 2010 Amendment would affect that contractual right because it would require Kia to give Glassman notice.

**D.  Kia's Constitutional Argument**

Kia contends that applying the 2010 Amendment retroactively would violate the Contracts Clauses of the United States and Michigan Constitutions because its unrestricted contractual right to establish a new dealer outside the 6-mile radius would be impaired. The fact that retroactive application would raise a significant constitutional question provides an additional reason for applying the 2010 Amendment prospectively only. *See Dale Baker Oldsmobile*, 794 F.2d at 221 ("A state statute, which has not been authoritatively construed by the state court, should be construed in a manner which will avoid such constitutional questions."). Because we hold that the 2010 Amendment is not retroactive, we need not reach the constitutional issue.

## III.  CONCLUSION

In sum, we agree with the district court that the Agreement did not incorporate future changes in the anti-encroachment law and that the 2010 Amendment is not retroactive. We therefore **AFFIRM** the order granting Kia's motion to dismiss and for judgment on the pleadings and denying Glassman's motion.