JOE DWYER, INC v JAGUAR CARS, INC

Docket No. 89762. Submitted January 12, 1988, at Detroit. Decided April 5, 1988.

Joe Dwyer, Inc. (JDI) and Jaguar Cars, Inc., entered into dealer franchise agreements whereby JDI was a new car dealer for Jaguar Cars' Triumph automobiles. The agreements were renewed annually. The last franchise agreement between JDI and Jaguar Cars extended from January 1, 1981, to December 31, 1981. On August 27, 1981, Jaguar Cars offered its United States dealers two options: (1) to discontinue relations with Jaguar Cars, after which all Triumph automobiles and nonobsolete parts as well as inventory would be repurchased by Jaguar Cars or (2) to continue as authorized parts and service dealers for Triumph automobiles for certain other incentives. JDI allegedly never responded to the offer, but did continue to sell parts for and to service Triumph automobiles. On October 12, 1982, JDI wrote to Jaguar Cars asking to terminate its relationship with Jaguar Cars. On December 3, 1982, counsel for Jaguar Cars wrote back, informing JDI that Jaguar Cars agreed to repurchase parts pursuant to the 1981 dealership agreement and to repurchase JDI's "inventory of stocking parts at current dealer prices less a 40% handling charge." The letter also stated that § 11 of the motor vehicle dealers, distributors and manufacturers act, which was passed after the 1981 dealership agreement became effective, did not apply because its application would alter the substantive provisions of that agreement. Section 11 was given immediate effect by the Legislature on July 19, 1981, and was amended effective November 1, 1983. On November 10, 1983, JDI filed suit against Jaguar Cars, Inc., in Wayne Circuit Court alleging that § 11 of the act applied. Both parties moved for summary disposition. The court, William Leo Cahalan, J., held that § 11 did apply to the parties' 1981 agreement, declined to address plaintiff's allegation that the

REFERENCES

Am Jur 2d, Contracts § 171.

Am Jur 2d, Statutes §§ 347-355.

For annotations, see Index to Annotations under Retrospective Operation and Laws.

Franchise Investment Law applied to its 1982 sales of Triumph parts and servicing of Triumph automobiles because plaintiff had not raised that issue in its pleadings and, therefore, that issue was not properly before the court, and denied plaintiff's motion for summary disposition as to damages because there was a genuine issue of material fact as to the amount of damages due. Defendant appealed by leave granted. Plaintiff cross-appealed.

The Court of Appeals *held:*

1. The Legislature did not intend that § 11 of the act be retroactively applied.

2. Plaintiff's argument that § 11 was merely intended to refine the concept of fair dealing as embodied in the now-repealed motor vehicle dealers, distributors and manufacturers act of 1978 is rejected. Section 11 imposed a specific duty upon manufacturers or distributors whenever a dealer agreement was terminated. The earlier act provided no specific remedy when the manufacturer or distributor terminated a dealer agreement with good cause.

3. Section 11 of the act does not apply to the parties' dealer agreement, therefore defendant's claim that application of § 11 to the agreement would violate the contract clause of the Michigan Constitution need not be addressed.

4. The issue of whether the Franchise Investment Law applies to the parties' relationship after December 31, 1981, is not preserved for appeal because that issue was never decided by the trial court. Plaintiff's request to amend its pleadings to raise that issue was granted after the parties' motions for summary disposition were heard.

5. The trial court properly denied plaintiff's motion for summary disposition as to the issue of damages because there exists a genuine issue of material fact as to their amount.

The trial court's order applying § 11 to the parties' dealer agreement is reversed. The order denying plaintiff's motion for summary disposition on the issue of damages is affirmed.

1. STATUTES — PROSPECTIVITY.

Statutes generally are presumed to apply prospectively only.

2. STATUTES — RETROACTIVITY.

There are four rules to consider when determining whether a new act applies to a pre-enactment cause of action: (1) the specific language in the new act must be reviewed to see if it contains language giving the act retrospective or prospective effect; (2) even though a statute relates to an antecedent event, it need not be given retrospective effect; (3) a retrospective law

is one which takes away or impairs vested rights acquired under existing laws or creates a new obligation and imposes a new duty or attaches a new disability with respect to transactions or considerations already past; and (4) a remedial or procedural act which does not destroy a vested right will be given effect though the injury or claim is antecedent to the enactment of the statute.

3. CONTRACTS — MOTOR VEHICLE DEALERSHIP AGREEMENTS — MOTOR VEHICLE DEALERS, DISTRIBUTORS AND MANUFACTURERS ACT.

Section 11 of the motor vehicle dealers, distributors and manufacturers act of 1981 does not apply to dealer agreements entered into before its effective date of July 19, 1981, but terminated thereafter (MCL 445.1571; MSA 19.856[31]).

*Barnett, Knight, Preston, Falvay, Drolet & Freeman* (by *Bruce Knight*), for plaintiff.

*Vandeveer, Garzia, Tonkin, Kerr, Heaphy, Moore, Sills & Poling, P.C.* (by *John J. Lynch* and *Robert D. Brignall*), for defendant.

Before: J. H. GILLIS, P.J., and WEAVER and G. S. ALLEN,* JJ.

PER CURIAM. Defendant appeals by leave granted from the trial court's order denying defendant's motion for summary disposition and granting plaintiff's motion for summary disposition because it ruled that MCL 445.1571; MSA 19.856(31) applied to the parties' dealer agreement which was entered into before the effective date of that statute but terminated after its effective date. Plaintiff cross-appeals. We reverse the trial court's order denying defendant's motion for summary disposition and granting plaintiff's motion. We affirm the trial court's decision denying plaintiff's cross-motion for summary disposition as to damages.

Plaintiff and defendant have entered into dealer

* Retired Court of Appeals judge, sitting on the Court of Appeals by assignment.

franchise agreements since 1960 whereby plaintiff was a new car dealer for defendant's Triumph automobiles. These agreements were renewed annually. In June of 1980, defendant notified plaintiff that, after December, 1981, Triumphs would no longer be manufactured for sale in the United States because sales were poor. Plaintiff and defendant's last franchise agreement extended from January 1, 1981, to December 31, 1981. Plaintiff claims that the agreement was formally executed on July 14, 1981. Paragraph 36 of that agreement provided:

> Upon termination of this Agreement by either party, or upon its expiration without renewal the Company will repurchase from the Dealer at the net price paid by the Dealer, less a deduction for any damage and less any rebates or allowances:
> (a) All new and unused vehicles of the current or preceding model year bought from the Company;
> (b) All new spare parts (see § 4) and special tools which were (i) purchased by the Dealer from the Company within the preceding twelve months, or (ii) included on any parts stocking list recommended to the Dealer by the Company;
> (c) Signs carrying the names of Vehicle Lines, on the basis of a reasonable adjustment to the original price reflecting the period of use and current condition.
> Proof may be required that any such property is owned by the Dealer and is free of liens or encumbrances, and matters may be settled directly with any lender holding a security interest in such property.

Defendant claimed that on August 27, 1981, its president wrote to all United States dealers, including plaintiff, and offered them two options: (1) to discontinue relations with defendant, after

which defendant would repurchase all Triumph automobiles and all nonobsolete parts as well as inventory or (2) to continue as authorized parts and service dealers for Triumph for certain other incentives. Defendant claims that plaintiff never responded to this offer.

Even so, plaintiff continued to sell parts for and to service Triumphs. On October 12, 1982, plaintiff wrote defendant asking to terminate its relationship with defendant. On December 3, 1982, defendant's counsel wrote to plaintiff and informed plaintiff that defendant accepted its termination notice, effective December 12, 1982, and agreed to repurchase parts pursuant to paragraph 36 of the 1981 dealership agreement and to repurchase its "inventory of stocking parts at current dealer prices less a 40% handling charge." Defendant's counsel's letter further informed plaintiff that MCL 445.1571; MSA 19.856(31), which was passed after the 1981 dealership agreement became effective, did not apply because its application would alter the substantive provisions of that agreement.

MCL 445.1571; MSA 19.856(31) (hereinafter § 11) was given immediate effect by the Legislature on July 19, 1981, and provided:

(1) Upon the termination, cancellation, nonrenewal, or discontinuance of any dealer agreement, the new motor vehicle dealer shall be allowed fair and reasonable compensation by the manufacturer or distributor for the following:

(a) New current model year motor vehicle inventory purchased from the manufacturer or distributor, which has not been materially altered, substantially damaged, or driven for more than 300 miles.

(b) Supplies and parts inventory purchased from the manufacturer or distributor and listed in the manufacturer's or distributor's current parts catalog.

(c) Equipment, furnishings, and signs purchased from the manufacturer or distributor.

(d) Special tools purchased from the manufacturer or distributor within 3 years of the date of termination, cancellation, nonrenewal, or discontinuance.

(2) Upon the termination, cancellation, nonrenewal, or discontinuance of a dealer agreement by the manufacturer or distributor, the manufacturer or distributor shall also pay to the new motor vehicle dealer a sum equal to the current, fair rental value of his or her established place of business for a period of 1 year from the effective date of termination, cancellation, nonrenewal, or discontinuance, or the remainder of the lease, whichever is less. However, the payment required by this subsection shall not apply to any termination, cancellation, nonrenewal, or discontinuance made pursuant to section 10(c).

Section 11 was amended effective November 1, 1983.

On November 10, 1983, plaintiff filed suit against defendant, alleging that MCL 445.1571; MSA 19.856(31) applied. Defendant moved for summary disposition, alleging that plaintiff had failed to state a cause of action upon which relief could be granted because § 11 did not apply to agreements entered into before July 19, 1981. Moreover, defendant alleged that § 11 did not apply to plaintiff's decision to service Triumphs and to sell Triumph parts in 1982 because there was no written contract between plaintiff and defendant concerning the sale of new motor vehicles. See MCL 445.1562; MSA 19.856(22). Plaintiff then moved for summary disposition claiming that § 11 applied to its 1981 agreement with defendant. Plaintiff further claimed that the Franchise Investment Law, MCL 445.1501 *et seq.*; MSA 19.854(1) *et seq.*, applied to its 1982 sales of Triumph parts and servic-

ing of Triumphs. Plaintiff contends that defendant failed to comply with the Franchise Investment Law because it failed to file notice of its intention to offer for sale a parts and service franchise. MCL 445.1507a(1); MSA 19.854(7a)(1). In the alternative, plaintiff claimed that its 1981 franchise agreement was renewed by the parties' conduct in 1982 and, therefore, § 11 applied. Defendant responded that the Franchise Investment Law did not apply because plaintiff had not raised the issue in its pleadings or moved to amend its complaint.

On September 17, 1985, plaintiff moved to amend its complaint to allege a violation of the Franchise Investment Law. The trial court issued its order and opinion on October 10, 1985. The court held that § 11 did apply to the parties' 1981 agreement. The trial court declined to address plaintiff's allegation that the Franchise Investment Law applied because plaintiff had not raised that issue in its pleadings and, therefore, that issue was not properly before the court. Finally, the court denied plaintiff's motion for summary disposition as to damages because there was a genuine issue of material fact as to the amount of damages due. On January 31, 1986, plaintiff's motion to amend its complaint was granted.

At the time the trial court heard the parties' motions for summary disposition, there were conflicting United States District Court decisions on the issue of whether § 11 applied to agreements entered into before its effective date. In *Dale Baker Oldsmobile, Inc v Fiat Motors of North America,* No. G83-1045 CA 1 (WD Mich, Nov 2, 1984), Judge Douglas Hillman held that § 11 did not apply to dealer agreements entered into before its effective date but terminated thereafter; however, in *Eastern Sport Car Sales, Inc v Fiat Motors of North America,* No. 84-4738 (ED Mich, Jan 4,

1985) (order granting motion for summary judgment), Judge Robert DeMascio disagreed and applied § 11 to contracts executed before its effective date.

Because the federal court decisions conflicted, the trial court followed this Court's decision in *Anderson's Vehicle Sales, Inc v OMC-Lincoln,* 93 Mich App 404; 287 NW2d 247 (1979). In *Anderson's,* the plaintiff and the defendant had a year-to-year dealer agreement which was terminable upon thirty days written notice. The defendant sent the plaintiff timely notice that its dealership agreement would be terminated on August 5, 1978. On July 11, 1978, the Legislature enacted a dealer agreement statute which required sixty days written notice and good cause for valid termination. The trial court held that the statute, which was effective immediately, did not apply to agreements entered into prior to its effective date. This Court reversed. This Court held that there was no retroactivity problem because the statute prohibited termination of the dealer agreement, not notice of termination, and, because the termination occurred after the statute became effective, the statute applied. Moreover, this Court held that the words of the statute (i.e., "[n]otwithstanding the terms, provisions, or conditions of a dealer agreement") along with the language giving the statute immediate effect indicated the Legislature's intent that the law have immediate effect. This Court also noted that the portion of the statute which required good cause for termination merely embodied a common law requirement for termination in slightly different language (i.e., "with good cause and in accordance with reasonable standards of fair dealing" compared to "good faith"). This Court further rejected the defendant's claim that its contract rights would be destroyed, holding that

the valid exercise of police powers does not impair the obligation of existing contracts because the Legislature may regulate potential inequities inherent in the economic relationship between manufacturers and dealers of motor vehicles.

Following the trial court's order in this case, Judge Hillman's decision in *Dale Baker Oldsmobile, Inc, supra,* was affirmed. *Dale Baker Oldsmobile, Inc v Fiat Motors of North America, Inc,* 794 F2d 213 (CA 6, 1986). In that case, the parties entered into a dealer agreement in 1980 and the defendant terminated the agreement on January 21, 1983, in accordance with the terms of the 1980 dealer agreement. Although the 1980 agreement contained provisions regarding the repurchasing of automobiles, parts, and equipment, the plaintiff claimed that § 11, as enacted on July 19, 1981, applied. Judge Hillman disagreed, finding *Anderson's* distinguishable because § 11 of the 1981 act did not contain the language "[n]otwithstanding the terms, provisions, or conditions of a dealer agreement" even though other sections of the 1981 act did. Furthermore, Judge Hillman, relying on our Supreme Court's decision in *Karl v Bryant Air Conditioning Co,* 416 Mich 558; 331 NW2d 456 (1982), held that § 11 would be applied retrospectively to the defendant if it was applied to the parties' dealer agreement because it would create a new obligation or duty with respect to a transaction already past (i.e., execution of the dealer agreement.) We note that *Karl* was decided after *Anderson's.*

As a general rule, statutes are presumed to apply prospectively only. *Grogan v Manistique Papers, Inc,* 154 Mich App 454, 458; 397 NW2d 825 (1986), lv den 428 Mich 885 (1987). In *Karl,* our Supreme Court decided whether the doctrine of comparative negligence applied to products liabil-

ity actions sounding in implied warranty and, if
so, whether the doctrine of comparative negligence
applied to an action filed before the enactment of
the products liability comparative negligence stat-
ute but tried thereafter. In deciding the latter
issue, the Court discussed four rules. First, the
specific language of the statute must be reviewed
to see if it contains language giving it retrospec-
tive or prospective effect. Second, even though a
statute relates to an antecedent event, it need not
be given retrospective effect. The Court noted that
this second rule applies when the amount of enti-
tlement under a statute is measured in part by
services rendered under a prior statute; it does not
apply in determining what, if any, changes may be
made with respect to a cause of action begun
under one rule of law by a subsequent statute.
*Karl, supra* at 571. Third, a law is retrospective
where it takes away or impairs vested rights ac-
quired under existing laws or creates a new obliga-
tion and imposes a new duty or attaches a new
disability with respect to transactions or considera-
tions already past. *Id.* Fourth, a remedial or proce-
dural act which does not destroy a vested right
will be given effect even though the injury or
claim is antecedent to the enactment of the stat-
ute. *Id.* The Court noted that these third and
fourth rules both relate to retrospective applica-
tion of new law to prior facts. *Id.* at 572. Retroac-
tive application of a new law in the third situation
is unacceptable whereas in the fourth situation it
is acceptable. The Court noted that, where a new
law interferes with express contractual rights or
abolishes a cause of action, it should not be ap-
plied retrospectively. *Id.* at 572-575. On the other
hand, a remedial or procedural statute may oper-
ate retrospectively if it does not take away vested
rights. *Id.* at 575.

In *Dale Baker, supra,* the Sixth Circuit Court of Appeals, relying on *Karl* and cases discussed therein, noted:

> [T]he statutes which are considered remedial, and thus retrospectively applicable, have affected procedural rights or rights incident to substantive rights. In this sense, remedial statutes involve procedural rights or change the procedures for effecting a remedy. They do not, however, create substantive rights that had no prior existence in law or contract. [*Dale Baker Oldsmobile, Inc, supra* at 217.]

The Court then discussed the rules outlined in *Karl.* The Court noted that the first two rules were inapplicable. *Dale Baker, supra* at 218. We agree.

The Sixth Circuit Court of Appeals then held:

> There is no doubt that application of section 11 in this case would impose substantial new duties on defendant as well as giving plaintiff *substantive rights,* neither of which existed by law or contract. Under section 11, defendant would be required to pay plaintiff a sum equivalent to the current rental value of plaintiff's place of business for one year, or, if there is a lease, the remainder of the lease, whichever is less. In addition, section 11 requires the defendant to purchase cars, parts, tools and signs under terms substantially different than those provided in the parties' agreement.
>
> Contrary to plaintiff's argument, section 11 of the Motor Vehicle Act is remedial only in the sense that virtually all legislation is remedial; that is, the legislature has addressed what it perceives to be a problem and has attempted to resolve it. This kind of label is of no help, however, in determining the application of the statute. Rather, resort must be made to the more meaningful distinctions we have made above. The cases reveal that remedial, in this context, relates to *procedural:* statutes which determine the manner of

effecting a remedy. We believe that section 11 falls squarely within the Michigan Supreme Court's rule that retrospective application of a law is improper where the law "creates a new obligation and imposes a new duty, or attaches a new disability with respect to transactions or considerations already past." *In re Certified Questions [Karl]*, 416 Mich at 572; 331 NW2d 456. In accordance with the authorities discussed, we believe that the Michigan Supreme Court would so rule. [*Id.* at 219-220.]

See also *Scuncio Motors, Inc v Subaru of New England, Inc,* 715 F2d 10 (CA 1, 1983).

We note that the plaintiff in *Dale Baker* also argued that the defendant had no "vested" rights which were impaired by the application of § 11. In other words, because the defendant exercised its right to terminate only after the effective date of § 11, that section applied. This argument appears to be the one made in *Anderson's.*[1] The Sixth Circuit Court of Appeals rejected this argument, noting that the defendant's contract rights became "vested" when the parties entered into the dealer agreement and that these contract rights were protected by *Karl.*

In addition, the plaintiff in *Dale Baker* claimed that § 11, when viewed in the context of the entire dealer-agreement statutory scheme, indicates the Legislature's intent to apply that section retroactively. Again, the Sixth Circuit Court of Appeals rejected plaintiff's argument, holding that the Legislature is presumed to be acquainted with rules of statutory construction and, therefore, its failure to

---

[1] The *Dale Baker Oldsmobile Inc v Fiat Motors of North America, Inc,* 794 F2d 213 (CA 6, 1986) court rejected the holding in *Anderson's Vehicle Sales, Inc v OMC-Lincoln,* 93 Mich App 404; 287 NW2d 247 (1979), finding that it believed that our Supreme Court would have ruled otherwise. *Dale Baker, supra* at 218. See also *McAleer Buick-Pontiac Co v General Motors Corp,* 95 Ill App 3d 111; 50 Ill Dec 500; 419 NE2d 608 (1981).

state that the rule was to be retroactively applied indicated that the rule was to be prospectively applied. *Id.* at 220-221.

In this case, plaintiff argues that § 11 should be read in context with other sections of the dealer agreement statutory scheme which contain the phrase "[n]otwithstanding any agreement" and, therefore, applied retroactively to avoid chaos. We disagree. Like the *Dale Baker* court, we note that the Legislature is presumed to be familiar with rules of statutory construction. *Ballog v Knight Newspapers, Inc,* 381 Mich 527; 164 NW2d 19 (1969). Similarly, the Legislature is charged with knowledge of existing laws on the same subject when it promulgates new laws. See, e.g., *People v Buckley,* 302 Mich 12, 21; 4 NW2d 448 (1942). Here, *Anderson's* was decided in 1979, § 11 was passed in 1981. Moreover, the rules regarding retroactive and prospective application of statutes were well known even prior to *Karl.* Therefore, like the *Dale Baker* court, we reject plaintiff's claim that the Legislature intended § 11 to be retroactively applied.

Plaintiff also argues that § 11 merely refined the concept of fair dealing embodied in now-repealed MCL 445.521(g); MSA 19.856(1)(g), which provided:

"Fair dealing" means the duty of a party to a dealer agreement and all officers, employees, or agents of a party, to act in a fair and equitable manner toward each other so as to guarantee a party freedom from coercion, intimidation, or threats of coercion or intimidation from another party. Fair dealing includes recommendation, exposition, persuasion, argument, a request that a dealer agreement be performed, and advice that a dealer agreement is not being performed.

Now-repealed MCL 445.522(1); MSA 19.856(2)(1) provided:

Notwithstanding the terms, provisions, or conditions of a dealer agreement, the parties to the agreement, in performing, dealing, or complying with the terms, provisions, or conditions of a dealer agreement or in terminating, canceling, or failing to renew a dealer agreement, shall act with good cause and in accordance with reasonable standards of fair dealing.

We note that now-repealed MCL 445.532; MSA 19.856(12) allowed a dealer to sue for damages when its dealer agreement was terminated without good cause. No specific remedy was provided when the manufacturer or distributor terminated the dealer agreement with good cause. Hence, we reject plaintiff's argument that § 11 was merely intended to define fair dealing; instead, we believe that it imposed a specific duty upon manufacturers or distributors when the dealer agreement was terminated.

Having ruled that MCL 445.1571; MSA 19.856(31) does not apply to the parties' dealer agreement, we need not address defendant's claim that application of this statute to its agreement would violate the contract clause of the Michigan Constitution. Const 1963, art 1, § 10. *J B Simpson, Inc v State Board of Tax Administration,* 297 Mich 403, 407; 298 NW 81 (1941), cert den sub nom *Brown v J B Simpson, Inc,* 314 US 674; 62 S Ct 137; 86 L Ed 539 (1941). Moreover, the issue of whether the Franchise Investment Law applies to the parties' relationship after December 31, 1981, is not preserved for appeal because that issue was never decided by the lower court given that plaintiff's request to amend its pleadings to raise that issue was granted only after the parties' motions for summary disposition were heard. *Behlen Mfg Co v Andries-Butler, Inc,* 52 Mich App 317, 323; 217 NW2d 125 (1974). Finally, because we have

held that MCL 445.1571; MSA 19.856(31) does not apply to the parties' agreement and we have left it to the lower court to determine whether the Franchise Investment Law applies to this case, the trial court properly denied plaintiff's motion for summary disposition as to the issue of damages because there exists a genuine issue of material fact as to their amount.

The trial court's order applying MCL 445.1571; MSA 19.856(31) to the parties' dealer agreement is reversed. The trial court's order denying plaintiff's motion for summary disposition on the issue of damages is affirmed.