# United States Court of Appeals
## For the First Circuit

---

No. 00-2052

ROCHESTER LINCOLN-MERCURY, INC.,

Plaintiff, Appellant,

v.

FORD MOTOR COMPANY,

Defendant, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Steven J. McAuliffe, U.S. District Judge]

---

Before

Selya, Boudin and Lynch,

Circuit Judges.

---

Daniel A. Laufer for appellant.
Bryan M. Haynes with whom Nicholas T. Christakos and
Sutherland Asbill & Brennan, LLP were on brief for appellee.

---

May 7, 2001

---

BOUDIN, Circuit Judge. The question on this appeal is whether a New Hampshire statute, regulating, inter alia, business practices as between motor vehicle manufacturers and dealers, should be read to protect an existing franchisee alleging that the car maker unfairly denied it an additional franchise. The district court denied relief based on state precedent, Roberts v. Gen. Motors. Corp., 643 A.2d 956 (N.H. 1994). We affirm.

Since 1974, Edward Casaccio has owned and operated Rochester Lincoln-Mercury, Inc. ("Rochester"), a dealership in Rochester, New Hampshire, with a franchise from Ford Motor Company ("Ford") to sell and service Lincoln and Mercury cars. In August 1995, Casaccio applied for a franchise to sell Fords in Rochester as "Rochester Ford." The incumbent franchisee had died and Casaccio had contracted with the heirs to purchase the Ford business, conditional on Ford's approval of Casaccio's application.

Ford's regional sales manager rejected Casaccio's application. To explain his decision, the sales manager pointed to Rochester's "historically unsatisfactory sales and market share performance." Claiming that his sales record was unfairly compared to dealerships in more affluent areas, Casaccio

-2-

appealed to higher-level Ford officials. His appeal was unsuccessful.

In November 1999, Rochester filed a diversity suit in federal district court, 28 U.S.C. § 1332 (Supp. II 1996), alleging that Ford's "arbitrary and/or . . . bad faith" denial of Casaccio's application violated New Hampshire's motor vehicle franchise statute. N.H. Rev. Stat. Ann. § 357-C:3(I) (1995 & Supp. 2000). Rochester claimed economic damages of $5 million. Citing Roberts, the district court granted Ford's motion to dismiss the complaint for lack of standing to sue under the state statute. Rochester now appeals.

The New Hampshire statute regulates "business practices between motor vehicle manufacturers, distributors, and dealers." N.H. Rev. Stat. Ann. § 357-C. Section 357-C:3 ("Prohibited Conduct") lists unlawful acts; and subsection I, invoked by Rochester, states: "It shall be deemed an unfair method of competition and unfair and deceptive practice for any . . . [m]anufacturer . . . to engage in any action which is arbitrary, in bad faith, or unconscionable and which causes damage to any ["motor vehicle dealer"] or to the public."

Section 357-C:12(II) ("Enforcement") provides the cause of action for unlawful acts. It states that

> any person who is injured in his business or
> property by a violation of this chapter . .

> . may bring a civil action in the superior
> court to enjoin further violations and to
> recover the actual damages sustained by him
> together with the costs of the suit,
> including a reasonable attorney's fee.

N.H. Rev. Stat. Ann. § 357-C:12(II) (1995), currently codified at § 357-C:12(IX) (Supp. 2000). In Roberts, the New Hampshire state court looked to section 357-C:12(II) and held that an unsuccessful new applicant for a franchise lacked standing under "this chapter" (i.e., 357-C) because he had not been "injured in business or property." 643 A.2d at 958-59.

In cases like this one, there is obviously standing in the Article III sense: Rochester can prove, or at least might be able to prove, that it is economically worse off as a direct consequence of Ford's refusal to approve the franchise application. However, in Roberts, the New Hampshire Supreme Court read subsection I as designed, so far as dealers were concerned, to protect existing dealer franchises and not applicants who were merely seeking franchises. 643 A.2d at 959. In turn, the district court here found that Rochester, so far as it was a new applicant, was not intended to be protected.

Rochester seeks to distinguish Roberts on the ground that Rochester is an existing franchisee and the applicant in Roberts was not. But, as we read Roberts, the statute's protection is for the existing franchise of the franchisee and

not some new and different franchise sought by that person.  The usual argument for protecting existing franchisees by statute is their investment in the existing franchise, Roberts, 643 A.2d at 960; but while Rochester invested in its franchise to sell Lincolns and Mercuries, it had no investment in a franchise to sell Fords.

The New Hampshire court in Roberts stressed the statutory language that extends protection only to the "business or property" of the dealer.  643 A.2d at 958-59.  Another court might have said that such language is vague and instead stressed likely legislative policy--for it is highly unusual for statutes to impose some general obligation on businesses to begin new relationships and much more common to protect existing ones.  If we were construing the statute afresh, we would agree with the Roberts court, but our agreement is beside the point.  Reading Roberts as we do, that case is binding on the federal courts as a definitive construction of New Hampshire law by the state's highest court.  Smiley v. Kansas, 196 U.S. 447, 455 (1905).

Counterpart decisions in other jurisdictions have denied claims by current dealers against their car makers who refused to grant or approve transfer requests for new franchises.  E.g., Key v. Chrysler Motors Corp., 918 P.2d 350, 359-60 (N.M. 1996); Pung v. Gen. Motors Corp., 573 N.W.2d 80,

-5-

81-82 (Mich. Ct. App. 1998). Rochester relies on <u>Bertera Chrysler Plymouth, Inc.</u> v. <u>Chrysler Corp.</u>, 992 F. Supp. 64, 69-70 (D. Mass. 1998), as support for standing in such a case; but while the district court there found "standing" (under a Massachusetts statute), it concluded that "the harm alleged . . . does not fall within the ambit of [the statute's] protection." <u>Id.</u> at 68. This is <u>Roberts</u>' result, differently phrased.

In this court (although not in its complaint), Rochester refers briefly to language, in subsection III(n) of the statute, providing that the car maker shall not unreasonably require dealer "compliance with subjective standards." N.H. Rv. Stat. Ann. § 357-C:3(III)(n). Rochester apparently seeks thus to describe the unfavorable judgment by Ford's regional manager of Rochester's past performance. Failure to plead this violation in the complaint aside, the argument is scarcely developed in Rochester's brief and could be rejected on this account alone. <u>Mass. Sch. of Law at Andover, Inc.</u> v. <u>Am. Bar Ass'n</u>, 142 F.3d 26, 43 (1st Cir. 1998).

In any event, subsection III(n) appears to be directed in all its provisions to the relationship between the car maker and the dealer vis-a-vis the dealer's existing franchise. Nothing in the provision suggests that the legislature aimed to regulate the decisions of the car maker, whether based on

subjective standards or otherwise, in awarding or refusing to award a franchise to an applicant who did not already hold it. It is hard to imagine that this statutory language would have changed the mind or result of the <u>Roberts</u> court.

<u>Affirmed</u>.