**Not for Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

---

No. 02-2443

M&D CYCLES,INC.
d/b/a DEPOT HONDA-KAWASAKI,

Plaintiff, Appellant,

v.

AMERICAN HONDA MOTOR CO., INC.,

Defendant, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph A. DiClerico, U.S. District Judge]

---

Before

Boudin, Chief Judge,

Torruella and Howard, Circuit Judges.

---

Stephanie A. Bray with whom Richard B. McNamara, Gregory A. Holmes, and Wiggin & Nourie, P.A., were on brief, for appellant.
Robert D. Cultice with whom Sean T. Carnathan, Benjamin M. Stern, Hale & Dorr, LLP, James P. Bassett, and Orr & Reno, P.A. were on brief, for appellee.

---

July 18, 2003

---

**Per Curiam**.  In <u>Rochester Lincoln-Mercury</u> v. <u>Ford Motor Co.</u>, 248 F.3d 46 (1st Cir. 2001), we concluded that N.H. Rev. Stat. Ann. § 357-C:3, I (prohibiting motor vehicle manufacturers from, <u>inter alia</u>, engaging "in any action which is arbitrary, in bad faith, or unconscionable and which causes damage to any [motor vehicle dealer]") does not provide a motor vehicle franchisee a cause of action against a manufacturer for unfairly denying it an additional franchise.  <u>See</u> <u>id.</u> at 47-48.  In reaching this conclusion, we clarified that the statute protects only the dealer's <u>existing</u> franchise.  <u>Id.</u> (applying <u>Roberts</u> v. <u>Gen. Motors Corp.</u>, 643 A.2d 956, 958-59 (N.H. 1994) and emphasizing that the statute's enforcement provision, N.H. Rev. Stat. Ann. § 357-C:12(II), secures the franchisee only in "his business or property").

Much like the plaintiff in <u>Rochester Lincoln-Mercury</u>, plaintiff-appellant M&D Cycles, Inc., d/b/a Depot Honda-Kawasaki ("Depot"), a motorcycle dealership franchised by defendant-appellee American Honda Motor Co., Inc., was aggrieved at American Honda's course of conduct in establishing a second motorcycle dealership that Depot's principal, Cynthia Mailloux, had hoped to acquire. The alleged conduct, which we describe below, included actions and representations made by American Honda District Sales Manager William Pugh and American Honda Zone Manager Steven Nicholson.

Perhaps recognizing the constraints imposed by Rochester Lincoln-Mercury and Roberts, Depot initiated a state court action claiming, inter alia, that the conduct in question violated N.H. Rev. Stat. Ann. § 357-C:3, I because it harmed Depot with respect to its existing "business or property." American Honda removed the action to federal court on the basis of diversity jurisdiction and eventually secured summary judgment. In ruling for Honda on the statutory claim, the district court concluded that Depot's alleged reliance upon conduct by Pugh and Nicholson was unjustifiable because there existed in Depot's franchise agreement with American Honda a provision stating that only a few, specified American Honda officers (not including Pugh or Nicholson) were capable of making promises and commitments that would bind the manufacturer. This provision, in the court's view, put Depot on notice that it acted at its own peril in relying upon Pugh or Nicholson. Depot appeals, framing the issue presented as follows:

> May Depot's franchise agreement, which provides that no employee of American Honda, other than certain senior officers of the corporation, "may make any promise or commitment on behalf of American Honda or in any way bind American Honda" and that "[d]ealer agrees that it will not rely on any statements or purported statements except from" these top [American] Honda officers, preclude Depot's claims under the New Hampshire Dealer Protection Statute . . . where that Statute specifically forbids a manufacturer-franchisor from limiting its statutory liability in its franchise agreements?

Brief for Appellant at vii.

The issue of New Hampshire law that Depot has raised is

interesting and potentially difficult, but it is not one that we will decide in this appeal (or certify to the New Hampshire Supreme Court, as Depot alternatively requests). We are free to affirm on any ground revealed by the record, e.g., <u>Houlton Citizens' Coalition</u> v. <u>Town of Houlton</u>, 175 F.3d 178, 184 (1st Cir. 1999), and here perceive a considerably more straightforward basis for upholding the district court's judgment. The conduct and statements of Pugh and Nicholson, when evaluated in an appropriate factual context, simply cannot give rise to liability under N.H. Rev. Stat. Ann. § 357-C:3, I even if they were imputed to American Honda. We briefly explain.

Depot is and since 1994 has been located in the town of Rye, in Rockingham County, New Hampshire. Depot's agreement with American Honda gives it a nonexclusive right to buy Honda products and to advertise itself as a Honda dealer. The agreement also reserves to American Honda the right to appoint other authorized Honda dealers wherever it deems appropriate (except as limited by law). In 1996, Dover Honda, a motorcycle dealership located in the nearby town of Somersworth, in Strafford County, New Hampshire, ceased operations. Following Dover Honda's closure, Depot was the dealer closest to Strafford County. In January 1997, Pugh offered Mailloux a six-month period for Depot to recoup Dover Honda's sales and to help American Honda achieve 30% market share in Strafford County. Depot fell well short of achieving the market share

American Honda sought within the six-month period or at any time thereafter.

The conduct underlying Depot's statutory violation claim began sometime prior to August 1997 (when the six-month probationary period expired) and continued throughout 1998. As summarized by Depot, it included (1) Pugh recruiting one Paul Gladstone, who lacked motorcycle sales experience but employed Pugh's then-girlfriend, to open a new Strafford County dealership prior to the expiration of the six-month period during which Depot was attempting to recoup Dover Honda's sales (and was concomitantly investing in its facility and inventory to facilitate its efforts); (2) Pugh informing Mailloux in October 1997 (after sending an application to Gladstone) that American Honda would be establishing an "open point," or location for a potential new dealership, in the Strafford County town of Rochester, New Hampshire, but assuring Mailloux that the open point would not be filled at that time and that he would speak to her and permit her to apply before awarding the dealership to another; (3) American Honda (apparently acting at the behest of Pugh) sending a second application for the Rochester open point to one Miles Cook, a friend of Pugh's, in February 1998 without informing Mailloux; (4) American Honda (again, apparently acting at the behest of Pugh) tentatively approving Cook's application in June 1998 (and subsequently extending deadlines by which he was to complete construction of the dealership until

February 1, 1999) without informing Mailloux; (5) Pugh and Nicholson refusing to allow Mailloux to apply for the dealership after she learned in December 1998 that the Rochester open point was in the process of being filled by Cook; and (6) Pugh and Nicholson conjuring an untruthful excuse for deterring Mailloux's application -- that American Honda had a policy on not allowing a single dealer to have two contiguous markets. See Brief for Appellant at 18-19.

While these allegations, which we credit for summary judgment purposes, certainly do not reflect well on Pugh and Nicholson, we are at a loss to see how they describe "action which [was] arbitrary, in bad faith, or unconscionable and which cause[d] damage to [Depot] . . . ." N.H. Rev. Stat. Ann. § 357-C:12, I (emphasis supplied). Depot's submissions have been extraordinarily vague on damage and causation, but a review of the record suggests an intention to argue that the challenged conduct harmed the Depot franchise by causing it to invest in its facility and to grow its inventory so as to serve the Strafford County market, and/or by causing it to lose sales to the new Rochester dealership.* Yet no reasonable fact-finder could fairly link either source of "damage" to the allegedly unlawful conduct.

_____

*Rochester Lincoln-Mercury precludes any claim under the statute for damage arising out of Depot's failure to secure the Rochester dealership. See 248 F.3d at 47-48.

Because Depot's franchise agreement is both nonexclusive and expressly reserves to American Honda the right to appoint additional dealers wherever it deems appropriate, the harms Depot suffered in attempting to serve the Strafford County market and in losing sales to the Rochester dealership cannot be considered to have been wrongly inflicted by American Honda unless the manufacturer was somehow bound by an extra-contractual legal obligation to forswear appointing a dealer to rival Depot in the Strafford County market. The only such obligation even suggested by the record was the January 1997 commitment to permit Depot to service Strafford County without competition from a dealership replacing Dover Honda. But this commitment extended only through August 1997, and was explicitly conditioned on Depot helping American Honda achieve a 30% market share. And as we have observed, Depot never came close to obtaining the specified market share. Nor did American Honda establish a competing dealership until approximately a year and a half after the six-month probationary period expired. The evidence thus does not allow for a finding that American Honda breached the commitment it made to Depot in January 1997.

That leaves only the evidence that Pugh committed to talking with Mailloux before American Honda awarded the dealership to another. But this evidence simply cannot support a damage award under the statute. First, Pugh's commitment was temporally vague

and arguably not even breached because Mailloux undisputedly learned of American Honda's plans to fill the Rochester open point several months before the actual establishment of the Rochester dealership. Second, the record is bereft of evidence that any investments in facility and/or inventory made in reliance on Pugh's post-August 1997 failure to be upfront with Mailloux -- the only of Depot's two damage theories potentially impacted by Pugh's silence -- caused Depot economic harm.

**Affirmed**. Costs to appellee.